SANFORD and another vs. THE TOWN OF SPENCER.

*January 14 — February 3, 1885.*

Taxation: When lumber is "merchants' goods:" Place of sale.

Lumber kept for sale is "merchants' goods" within the meaning of sec. 1040, R. S., and hence taxable in the district where it is located, irrespective of the residence of the owner or his agent, although no sales are made at the place where it is kept, if actual sales are made while it is there and it is delivered from that place to the purchasers.

APPEAL from the Circuit Court for *Portage* County.
The facts will sufficiently appear from the opinion.

The cause was submitted for the appellant on the brief of *G. W. Cate,* and for the respondents on that of *Raymond & Haseltine.*

TAYLOR, J. This is an action brought by the respondents against the appellant town to recover a sum of money which they allege was illegally collected by the town for taxes assessed upon their property, consisting of lumber, which, at the time of the assessment, was located in said town.

The evidence shows the following facts: (1) That the plaintiffs were nonresidents of the state, living and having a place of business in Freeport, Illinois; (2) that they were retail dealers in lumber, shingles, etc., having their place of business, as such dealers, at Freeport; (3) that they were, in 1880, the owners of a large quantity of lumber, piled and being in the town of *Spencer,* and that such lumber was liable to assessment and taxation in this state; (4) that the owners of the lumber had an agent residing in this state who looked after the piling, sorting, and shipping of their lumber; (5) that this lumber was assessed by the proper authorities of the town of *Spencer,* and taxes were levied thereon by said town; (6) that the taxes so levied upon said

lumber were collected by the treasurer of said town, by a sale of some of the property of said plaintiffs, and the money so collected was paid into the town treasury.

The above facts are not controverted. On the part of the appellant, it is claimed that the . evidence showed two other facts which are controverted by the respondents, viz.: (1) That the lumber upon which the tax was assessed and levied was merchants' stock, kept for sale by the respondents, and was, therefore, taxable in the town of *Spencer*, where it was located; and (2) if not merchants' stock, then the 'agent of the respondents was a resident of the town of *Spencer*, and for that reason the property was taxable in that town.

The action was tried by the court without a jury, and the court found against the town upon both of these questions. If these findings of the court are sustained by the evidence, then there is no contention on the part of the appellant that the tax was legal. The law is plain enough (see sec. 1040, R. S.) that personal property, owned by nonresidents who have an agent in this state who has charge of such property for such nonresidents, and which is not merchants' goods, wares, or commodities, or manufacturers' stock, within the meaning of said section, must be assessed and taxed in the town where such agent resides. Sec. 1040, R. S., reads as follows: "All personal property shall be assessed in the assessment district where the owner resides, except as hereinafter provided. If such owner be a nonresident of the state, but have an agent residing in this state in charge of such property, then the same shall be assessed in the district where such agent resides, otherwise in the district where the same is located, except as hereinafter provided. Merchants' goods, wares, commodities kept for sale, tools and machinery, manufacturers' stock, farm implements, live-stock, and farm products, excepting grain in warehouse, shall be assessed in the district where located. Saw-logs and timber, which are

to be sawed and manufactured in any mill within this state which is owned or leased by the owner of such logs and timber, shall be assessed as manufacturers' stock in the district where such mill may be located. Saw-logs, timber, railroad ties, lumber, and other articles not being manufacturers' stock, shall be assessed where the owner or his agent, in the ·case aforesaid, resides. No change of location, or sale of any personal property, after the first day of May, in any year, shall affect the assessment made in such year. As between school-districts, the location of personal property for taxation shall be determined by the same rules as between assessment districts."

This section was amended by ch. 244, Laws of 1879, by inserting the words " cord-wood " between the words "farm implements " and " live-stock," where they occur in said section; and ch. 165, Laws of 1880, added a proviso to the section which has relation only to the assessment of farm implements, live-stock, and farm products. For the purposes of this case, therefore, sec. 1040, R. S., controls the assessment of the property in question made in 1880.

This court decided in *Mitchell v. Town of Plover*, 53 Wis. 548, after a very full discussion, that lumber kept in a lumber-yard for sale in parcels or retail should be assessed for taxation in the assessment district in which it is located, irrespective of the residence of the owner or his agent. That lumber, when so kept for sale, is merchants' goods, wares, and commodities, within the meaning of the law, is not, therefore, an open question in this court. After a careful consideration of the evidence in this case, we think it is clearly shown that the lumber in question in this case was merchants' goods, kept for sale in the town of *Spencer*, and therefore taxable in that town, within the rule laid down in the case of *Mitchell v. Town of Plover*, and that the learned circuit judge erred in not so finding the fact.

The evidence of one of the plaintiffs given upon the

trial, and which is the only evidence on that subject, seems to us conclusive. On his cross-examination he testified: "We shipped directly from *Spencer* to parties to whom we sold it." "We shipped lumber from *Spencer* that we sold at Freeport directly to the parties to whom we sold it." "Never sold it directly to parties there" (meaning at *Spencer*). "At Freeport we sold lumber to parties and shipped it directly from *Spencer* to them." "We sometimes shipped directly from *Spencer* to the parties we sold it to." To the following question, "That was the custom of your business, then, while the lumber remained at *Spencer?*" the witness answered: "Well, we done that while we had it there; it was not the custom of our business only as we had it in the place."

On his redirect examination the following evidence was given: *Question.* "Did you ship from *Spencer* any car-load lots to any other than Freeport customers?" *Answer.* "No; we have no customers except customers we call Freeport customers." *Q.* "Then you shipped lumber from *Spencer* to supply all customers at your yard or vicinity?" *A.* "Yes; customers we had sold lumber to in different places. I can you give an example: We sold a large amount of lumber at that time and for years before and since, to Curtis Bros., of Clinton, Iowa. We commenced to sell to them from our yard; and at times afterwards, when we had lumber on the line of the road of the same kinds they were buying of us, that we could ship in car-load lots, we shipped it directly from where it was piled."

The evidence shows that the plaintiffs were retail dealers in lumber having a place of business at Freeport, Illinois, and buying and having lumber manufactured in this state for their trade. The lumber they bought or manufactured at *Spencer* was piled up there to dry and for sale. It is true there is no evidence that sales were made at *Spencer;* but the evidence is conclusive that the lumber at *Spencer*, or

some part of it, was sold while it remained at *Spencer*, and was shipped directly from there to the purchasers, without going to Freeport, their place of business. This lumber was therefore a part of their stock in trade, held for sale and some of it sold while it was in *Spencer*. The fact that some of it was transferred from *Spencer* to their place of business in Freeport before it was sold, does not show that it was not merchants' stock, kept for sale at *Spencer*. Under the evidence, there can be no doubt that the plaintiffs would have sold all they had at *Spencer*, and shipped it directly from there to their customers, had the demands of their customers been sufficient to have taken the whole. The fact that they did not find customers enough to take all the lumber held by them at *Spencer* for sale, so that it would be most convenient to ship to such customers direct from that place, does not change the fact that it was kept for sale there. Having it on hand, with a willingness to sell it, is keeping it for sale within the meaning of the statute. We do not deem it essential that the sales should be made at the place where the lumber is kept by the plaintiffs or their agents to bring such lumber within the meaning of the statute; but it is sufficient if it be kept for sale, and actual sales are made while there, and delivered from that place to the purchasers. To us it seems clear that the lumber upon which the taxes were levied and assessed, for the recovery of which taxes this action is brought, was merchants' goods, etc., kept for sale, and therefore taxable at the place where the same was located, viz., in the town of *Spencer*. It is true that the same witness who testified that the lumber was sold and delivered to purchasers directly from *Spencer* also says the lumber was not kept for sale at *Spencer;* but it is evident that all he intended by that was that they did not make sales while at *Spencer*, and that they did not keep a man there to sell for them.

Holding, as we do, that the evidence shows that the lumber upon which the taxes were assessed was merchants' goods,

etc., kept for sale at *Spencer*, the taxes were properly assessed upon it in that town; and it becomes unnecessary to determine whether the agent of the plaintiffs resided in the town of *Spencer* or at Stevens Point.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to the circuit court to enter judgment for the appellant.