## WINKLEY & a. v. NEWTON.

Ice cut from a pond and stored in this state by a non-resident ice-dealer, awaiting transportation out of the state at some indefinite future time, is taxable in the town where it is located as his stock in trade, under Gen. Laws, c. 54, s. 9, although he is taxed for it where he resides.

APPEAL from the refusal of selectmen to abate a tax. Facts found by the court. The plaintiffs, who reside in Boston, Mass., and are engaged in the business of cutting, storing, and selling ice, own ice-houses near the railroad, on the shore of Country pond in Newton, in which they store the ice cut by them from Country pond, which contains about one hundred acres. A small portion of the ice is sold from the ice-houses to customers at Newton, but it is mostly carried on the cars to Boston, where about two thirds of it is sold by the plaintiffs, in large quantities, for use on steamboats, and the remainder is disposed of at retail. The plaintiffs have an office and place of business, but no store-houses, in Boston, the ice being taken from the ice-houses at Newton on the cars to Boston for delivery as wanted. In April, 1889, the plaintiffs had twenty-four thousand tons of ice stored in their ice-houses at Newton, upon which the town of Newton assessed a tax of $214, of which the plaintiffs ask an abatement. The plaintiffs were also taxed in Boston in 1889 for the ice stored at Newton, as stock in trade. About fifty tons of the ice upon which the tax was assessed was sold at the ice-houses in Newton, and the rest was sold and delivered in Boston.

The plaintiffs contend that the ice was not taxable in Newton, and that there was an overvaluation. If it was taxable, they are entitled to an abatement of $102 on account of such overvaluation.

*Eastman & Marston*, for the plaintiffs.

*Frink & Batchelder*, for the defendants.

*Per Curiam.** Most questions relating to the taxation of property, or to its exemption from taxation, depend primarily for their

---

* Chief Justice Doe died March 9, 1896. In this and all the following cases where the opinion is *Per Curiam*, the judgment was announced by him. In all of them he stated orally, or read from brief and informal notes, the reasons of the judgment. He wrote no opinion in any of them. In some cases he left nothing in writing except a memorandum of the order for judgment, or of the conclusions of the court upon the questions submitted. The opinions are prepared by R. E. Walker, Esquire, whose purpose is to preserve as nearly as may be the language of such of Judge Doe's notes as may be found, and in their absence to state as briefly as possible in his own language the grounds of the decision. The opinions thus prepared are in every instance examined and approved by one or more of the surviving justices.

solution upon the prevailing constitutional policy of equality or inequality in the division of the public burden.    If it is assumed that all tax laws are iniquitous, that their enforcement is to be restricted by judicial decision within the narrowest possible limits, and that a vigorous resistance to the collection of taxes on all grounds is to be encouraged and supported by a resort to technical and specious argument, the result in very many cases would be against the validity of the tax.    Inequality of taxation, resulting from judicial exemptions or from the imposition of twofold burdens on a part of the tax-payers, may be in accordance with the policy of the law in some jurisdictions, where the doctrine of an approximate equality of taxation has not been developed to the extent that it has been in this state.    A presumption that no property is taxable which does not fall within the literal language of the statute, when construed as a highly penal statute and in derogation of common right, may account for many apparent failures of justice and for serious criticisms of judicial decisions.

But where there is a fundamental presumption that the legislative purpose in the enactment of tax laws is that each citizen shall bear his just and proportionate share of the public expense, that no man shall escape his part of the common burden and throw it upon his neighbors, and that property of the same class shall not be exempt from taxation in a few cases and not in all, the interpretation of these laws is not governed by narrow and technical rules, and their spirit and purpose may often be found to be broader or more limited than their literal language might seem to import.

" The unconstitutionality of unequal taxation is too plainly declared by our constitution, and too well settled by repeated decisions made during the last fifty-three years, to be debatable. A disproportional, unequal assessment, so far as it is disproportional and unequal, is an act, not of taxation, but of confiscation, destitute of that element of equal rights which, under our constitution, is an essential part of the definition of law." *Boston, Concord & Montreal Railroad* v. *The State*, 60 N. H. 87, 94. " If, then, equality and justice is the basis of all constitutional taxation, a statute founded on any other principle cannot be upheld." *State* v. *U. S. & Canada Express Co.*, 60 N. H. 219, 236. " By New Hampshire law, taxation is not extortion practised upon the people by an oppressor whom they circumvent by artifice, and an astute application of technical rules to his methods of procedure. It is a division among themselves of the expense of their own government of themselves,—a division made by themselves through their own agents, in pursuance of their original contract." *Edes* v. *Boardman*, 58 N. H. 580, 589. There is a strong presumption " that many clauses of the statutes, which, taken separately and literally, would make some property taxable twice or thrice, are not to be taken separately and literally, but are to be understood

as subjecting the property they describe to single taxation only, and as designed, by their various and comprehensive descriptions, to prevent property escaping single taxation." *Robinson* v. *Dover*, 59 N. H. 521, 525. The decision in *Cheshire County Telephone Co.* v. *The State*, 63 N. H. 167, is based upon the established doctrine of the constitutional equality of taxation, and not upon a strict or literal construction of statutes. It is there said,—"By the strict letter of the law, stock in telegraph companies is taxable under Gen. Laws, *c*. 53, *s*. 5, and, also, their property under Gen. Laws, *c*. 62, *ss*. 14, 15; yet both were not intended to be and are not taxed," because "the court is bound to presume that the legislature did not intend to violate the constitution." See, also, *Opinion of the Court*, 4 N. H. 565, 567; *Smith* v. *Burley*, 9 N. H. 423; *Smith* v. *Exeter*, 37 N. H. 556; *Kimball* v. *Milford*, 54 N. H. 406; *Morrison* v. *Manchester*, 58 N. H. 538; *Berry* v. *Windham*, 59 N. H. 288; *First National Bank* v. *Concord*, 59 N. H. 75; *Franklin Street Society* v. *Manchester*, 60 N. H. 342; *Curry* v. *Spencer*, 61 N. H. 624.

The statute under which the tax in question was assessed (G. L., *c*. 54, *s*. 9) provides that "Animals liable to be taxed kept in any town, and stock in trade employed in any town, owned by a person not resident therein, shall be taxed in such town to the owner or person having the care thereof on the first day of April, whether such person be a resident of the town or not," etc. This statute is not a statute of exemptions. It provides, in plain and unambiguous language, that a non-resident owning stock in trade in a town must bear his just and proportional share of the public burden. It does not provide that special favors in this respect are extended to him because he happens to reside elsewhere, or that his liability to be taxed for the same property in some other jurisdiction shall excuse him from paying equitably for the benefits and protection he receives here from our laws and institutions. Such a construction would do violence to the language of the statute, and would attribute to the legislature a purpose to disregard and overturn the constitutional requirement of equality of taxation. While the imposition of two taxes on the same property in one assessment, or a double valuation, would be unjust because it would be double taxation, subjecting the owner of the property to twice the burden he ought to bear, the omission to tax it at all would be equally unjust and inequitable, because it would be casting a burden upon his neighbors which the owner himself ought to bear.

The fact that the plaintiffs' ice, stored in this state, has been taxed to them in Massachusetts, and that they have paid the tax there, is immaterial. The question is, Is it rightfully and legally taxable here? If it is, then its taxation in another state does not render its taxation here wrongful and illegal. If the legislature of Massachusetts should authorize the taxation there of New

Hampshire real estate owned by its residents, its taxation here would still be in harmony with, and not in opposition to, our rule of equality, which applies to all real estate located in this state. To recognize such a right in another jurisdiction would introduce the most glaring inequality in the apportionment and collection of the public expense. The universally recognized rule, that the *situs* of real estate determines the place where it is taxable, and not the residence. of the owner (Cool. Tax. 56, 57), is a recognition and enforcement of the principle prevailing in this state, that, in consideration of the protection afforded to property by the state government, it should bear its equitable share of the expense of maintaining the government. *Berlin Mills Co.* v. *Wentworth's Location,* 60 N. H. 156. To tax it elsewhere and not to tax it here would be to violate that fundamental principle of equality.

The same principle applies to personal property as well as to real estate: both are equally under the protection of the law of the place where they are located, and both should contribute to the public expense. It follows, that while for some purposes, by a legal fiction, the residence of the owner of personal property determines its *situs*, its actual location authorizes its taxation without regard to the owner's residence. *Nashua Savings Bank* v. *Nashua,* 46 N. H. 389, 392. "The state may impose taxes on tangible personal property within the state, irrespective of the residence or allegiance of the owner." Cool. Tax. 56, 373. In *Coe* v. *Errol,* 116 U. S. 517, 524, Mr. Justice *Bradley* says,—"If the owner of personal property within a state resides in another state, which taxes him for that property as part of his general estate attached to his person, this action of the latter state does not in the least affect the right of the state in which the property is situated to tax it also. It is hardly necessary to cite authorities to a point so elementary."

"The power of taxation by any state is limited to persons, property, or business within its jurisdiction. Personal property, in the absence of any law to the contrary, follows the person of the owner, and has its *situs* at his domicile. But for the purposes of taxation it may be separated from him, and he may be taxed on its account at the place where it is actually located. . . . If the state has actual jurisdiction of the person of the owner, it operates directly upon him. If he is absent, and it has jurisdiction of his property, it operates upon him through his property." *Tappan* v. *Bank,* 19 Wall. 490, 499. This principle was discussed and applied in *Robinson* v. *Dover,* 59 N. H. 521, where it was decided that a resident of this state is not taxable here on account of his money deposited in a Massachusetts savings-bank, and that "a fund held in trust by a New Hampshire savings-bank, or other corporation, is taxable in New Hampshire," although the owner is domiciled elsewhere. See, also, *Berry* v. *Windham,* 59

N. H. 288; *Coe* v. *Errol*, 62 N. H. 303; *Duer* v. *Small*, 17 How. Pr. 201; *Dyer* v. *Osborne*, 11 R. I. 321.

On the first day of April, 1889, the plaintiffs' ice was stored in ice-houses in Newton, awaiting the season of the year when there would be a sufficient demand for it to enable them to sell it at a profit. A small part of it they expected to sell in Newton, but the most of it was held for transportation to, and for sale in, Boston. The plaintiffs were ice-merchants, and they were carrying on one branch of their business in Newton. To hold that this ice was not their stock in trade in Newton would require a strict and technical construction of the statute, at variance with the reasonable presumption that the legislature did not intend to establish in this section of the statute the rule of inequality. Ice stored for the purpose of future sale, contingent upon a great variety of conditions, is as properly called stock in trade as harvested crops of any kind, blocks of granite, or any other commodity severed from the land, converted into personal property, and held by the dealer until the demand therefor by his customers may render a remunerative sale probable. Nor is there any intimation expressed in the statute that the owner of a stock of merchandise, like ice, corn, potatoes, or granite, must necessarily intend to dispose of it by sale in this state, or that his stock would be any the less stock in trade employed here if his purpose was to transport it to another state and dispose of it there when his business should demand it. *Sanford* v. *Spencer*, 62 Wis. 230; *People* v. *Horn Silver Mining Co.*, 105 N. Y. 76; *Barker* v. *Watertown*, 137 Mass. 227; *Hood* v. *Judkins*, 61 Mich. 575.

In *s.* 6, *c.* 53, Gen. Laws, the legislature has enumerated the kinds of personal property that are taxable, and has declared that "stock in trade, whether of merchants, shopkeepers, mechanics or tradesmen employed in their trade or business, reckoning the same at the average value thereof for the year," is taxable; and that "raw materials and manufactures of any manufactory; wood, timber, logs, and lumber, manufactured or otherwise . . . for the purposes of taxation" are "to be deemed stock in trade." This is a plain legislative declaration that that phrase is to be understood in a broad and comprehensive sense, evidently including a stock of harvested ice; and that it was used in the same sense in *s.* 9, *c.* 54, under which the tax in question was assessed. Under the former statute, ice owned by a resident of Newton and stored there, as the plaintiffs' ice was stored, would be taxable to him on the first day of April as his stock in trade. So far as his stock of ice is concerned he would enjoy no greater protection from our laws, and, on equitable grounds, would be under no greater obligation to the state, than the non-resident plaintiffs. Can any substantial reason be suggested why he should be taxed for his ice, and the plaintiffs not taxed for their ice? Did the legislature intend to make such an unfair exemption in favor of non-

residents, or to discriminate in this way against the business of resident dealers in ice?   Such an intention is not expressed, and it cannot be inferred consistently with our theory of taxation.

To order an abatement of this tax would make it necessary to overrule the unreported decision of *Rawson* v. *Bill*, Cheshire, August, 1874, where it was held that hides owned by a person residing in another state and taxed to him in such state, but entrusted to a tanner residing in this state to be tanned here, are stock in trade, and taxable, under *s.* 9, *c.* 50, Gen. Stats., to the person having the care thereof on the first day of April, in the town where they are being tanned.   The statute referred to is identical with *s.* 9, *c.* 54, Gen. Laws, so far as it applies to the facts before us, and that case is a strong authority against the plaintiffs' contention.   The court proceeded on the theory that the hides in process of tanning constituted stock in trade within the meaning of the statute, and that the fact that the owner had been taxed for them in another state was immaterial.   It should be noted that the hides were not a product of this state, like the plaintiffs' ice, but were sent here for the temporary purpose of being tanned.   But that distinction, if material, shows that the decision of that case involved an additional element of difficulty which does not occur in this case.   Whether the distinction suggested is of legal importance we need not determine.   The reasons which led the court in *Rawson* v. *Bill* to hold the hides taxable are still more applicable to this case, and afford these plaintiffs no ground for relief.

It would, moreover, be a strange doctrine to hold that this ice was stock in trade in Massachusetts where it was not located, but that it was not stock in trade in New Hampshire, where it was produced, stored, and held for the future demands of trade. It is admitted that in Massachusetts the plaintiffs' ice, stored in New Hampshire for future use, was their stock in trade, but it is insisted that the same ice, though actually located in this state, is not their stock in trade here; that for the purpose of Massachusetts taxation it has a fictitious *situs* there where its owners reside, and is stock in trade, but that for the purpose of New Hampshire exemption from taxation, where its actual *situs* is, and where it is stored, it is not stock in trade, and is not taxable.   The logic of the argument is not apparent.   In order to abate this tax, we must find that it was not the plaintiffs' stock in trade here, and this involves a finding that it did not have that character in Massachusetts, and hence that it was illegally taxed as such there as well as here.   Having admitted the fact that their ice stored here is stock in trade in the Massachusetts assessment, it is not perceived on what ground they can consistently claim that its essential character is changed as soon as they are approached by a New Hampshire assessor.   The plain and obvious meaning of the lan-

guage used by the legislature, in the statute under consideration, does not exclude, but includes,. the plaintiffs' ice, and it was legally taxable in Newton.

As there was an overvaluation of the ice, the plaintiffs are entitled to an abatement of $102, on that ground alone.

*Case discharged.*

CLARK, J., did not sit: the others concurred.

