Grafton,
June 30, 1902.

CONNECTICUT VALLEY LUMBER CO. v. MONROE.

A case transferred upon an agreed statement of facts should contain some provision by which the conclusions of law arrived at may be specially applied by an order of the supreme court.

Logs not legally taxed elsewhere are taxable as stock in trade by the town into which they are transported for purposes of manufacture, although brought therein after the first day of April, and shipped out of the state in the form of lumber before the expiration of the year.

A tax upon the average value of a stock in trade, valid when assessed, is not rendered invalid by a subsequent abandonment of the business; and the fact that the owner does no business after the first day of April is immaterial, except as bearing upon the question of his intention upon that date.

Over-valuation of one class of a taxpayer's estate does not entitle him to an abatement if the total tax assessed against him does not exceed his share of the public burden.

PETITION, for abatement of taxes. Facts agreed, and case transferred from the February term, 1902, of the superior court by *Young*, J.

The plaintiffs are organized as a corporation under the laws of Connecticut, and do business in this state. Their principal business is cutting, transporting, sawing, and selling lumber. They own real estate in Monroe in this county, including a sawmill, and annually float down the Connecticut river logs cut in this state, in Vermont, and in Canada, some of which are usually held in booms at Monroe. The logs usually arrive there about June 15 of each year, and are there manufactured by the plaintiffs during the summer and succeeding winter; and the product, as fast as sawed, is stored in the plaintiffs' mill-yard in Vermont. The logs held in the booms have been heretofore taxed to the plaintiffs as stock in trade. In November, 1900, the plaintiffs' mill was shut down and has not been run since then, except that a part of the mill

was run about two days in May, 1901. The plaintiffs have continued to do business elsewhere in this state, and were then and are now manufacturing lumber in Massachusetts. They had no logs in their boom and no other stock in trade in Monroe, April 1, 1901, nor at any time since. Upon that date the plaintiffs were taxed upon real estate valued at $30,000 and stock in trade valued at $35,000. They ask an abatement of the tax assessed upon stock in trade. For the year preceding April 1, 1901, five to six million feet of lumber were manufactured at the plaintiffs' mill, worth when manufactured from $50,000 to $60,000.

The defendants offer to show that the average value equaled the amount at which the plaintiffs' stock in trade was appraised. The plaintiffs did not file any inventory. They offer to show that they paid taxes upon all logs owned by them April 1, 1900, and 1901, at the places where they then were. The defendants offer to prove that the whole tax assessed against the plaintiffs was not more than should have been assessed upon their real estate ·alone, upon a valuation in proportion to other property in the town. Other questions of evidence suggested are stated in the opinion.

*Hosford & Wright* (of Vermont) and *Drew, Jordan & Buckley,* for the plaintiffs.

*Smith & Smith* (of Vermont) and *Batchellor & Mitchell,* for the defendants.

PARSONS, J. A case presented to this court upon an agreed statement of fact should contain some provision by which the conclusions of law arrived at upon the facts may be specially applied by an order from this court. "It is no part of the business of the court to pronounce opinions upon abstract questions of law." *State* v. *Stevens,* 36 N. H. 59, 61. Neither will the court pass upon legal questions presented by an agreed case which may not be presented at the trial. *Sceva* v. *True,* 53 N. H. 627, 630. It is not usually advisable to pass upon unnecessary or hypothetical cases (*State* v. *Baron,* 64 N. H. 612; *Scheer* v. *Bedford,* 62 N. H. 691, 692), or to decide difficult questions which may not arise when all the facts are found, the decision of which is therefore not material to the rights of the parties. *State* v. *Railroad,* 70 N. H. 421, 435; *Fellows* v. *Fellows,* 68 N. H. 611, 612; *State* v. *Morin,* 65 N. H. 667. Some of the questions, however, argued in this case are essential to the rights in dispute in any view of the facts; and the decision of them at this time may aid in the trial, and possibly may render one unnecessary. They have therefore been considered.

The plaintiffs are a foreign corporation engaged in the manufacture of lumber, and doing business in this state. They are required by statute to conform to the laws of this state as to returns and taxation, as domestic corporations are. P. S., c. 148, s. 21. By the act of July 7, 1827 (Laws, ed. 1830, p. 555, s. 6), it was declared to be "the duty of the clerk, agent, or directors of any manufacturing company or corporation in this state, annually to exhibit to the selectmen of the town in which such manufacturing establishment is situated a true and just account of all the ratable estate of which such company or corporation shall be possessed on the first day of April in each year." In the revision of 1842 this provision was changed to a requirement that such corporations should furnish the same account on application by any selectmen at their principal place of business. R. S., c. 41, s. 7; G. S., c. 51, s. 8. In *Cocheco Mfg. Co.* v. *Strafford*, 51 N. H. 455, 470, 471, it was determined that a corporation taxable only for real estate, and having its principal place of business elsewhere, was not required by the statute to exhibit an account of their taxable estate to the selectmen of the town in which such real estate was located, as a prerequisite to the maintenance of a petition for tax abatement; and that the expression, persons "liable to be taxed," included inhabitants only and not non-residents,—in the latter case the tax being assessed against the land, and not against the owners. *Dewey* v. *Stratford*, 42 N. H. 282, 286.

Section 6, chapter 57, Public Statutes, requires selectmen to cause copies of the blank inventories provided under the statute "to be given to all persons and corporations within their respective towns who are taxable therein for any real or personal estate," while section 8 of the same chapter requires that "every . . . corporation, by its president or other principal officer, shall fill out the blank inventory in all respects according to its requirements, . . . and shall deliver such inventory to the selectmen." The same construction has been given to these provisions as was given to the earlier provisions providing for the exhibition of an account of ratable estate, and non-residents are not required to file an inventory. *Kent* v. *Exeter*, 68 N. H. 469, 470; *Farmington* v. *Downing*, 67 N. H. 441, 442.

The plaintiffs claim they were taxable April 1, 1901, in Monroe, only for the real estate owned by them upon that day. "Stock in trade employed in any town, owned by a person not resident therein, shall be taxed in such town to the owner or person having the care thereof, on the first day of April, whether such person be a resident of the town or not." P. S., c. 56, s. 10. Whether a non-resident, taxable for stock in trade employed in a town, is

within the reason of the interpretation excusing non-residents from the obligation to file an inventory or furnish an account, need not be determined at this stage of the case. It is clear that a non-resident, whether a person or corporation, who is taxable only for real estate, is not under that obligation. The substantial question, upon the merits, is whether the plaintiffs were taxable for stock in trade in Monroe April 1, 1901. If they were not, the fact that they did not file an inventory does not prevent their maintenance of this petition. If they were so taxable, as the question thus far presented appears to be one of right and not of erroneous appraisal, the question of technical right to maintain a petition unsustainable on the merits is not of practical importance. The tax was assessed upon the plaintiffs' logs held during a part of the year in their booms in Monroe. The plaintiffs offer to show that the same logs were taxed in the towns where they were on April 1, in this state, in Vermont, and in Canada, and that they have paid such taxes for the years 1900 and 1901 upon all logs owned by them therein in those years.

Logs and lumber may be taxable as stock in trade. P. S., c. 55, s. 7, cl. 6. The same species of property is taxable in the town in which it is situate or to which it is nearest April 1 (P. S., c. 56, ss. 16, 19), unless on the way to market and given in by the owner, a resident of this state, for taxation in the town in which he resides (*Ib.*, s. 18); but it was not the legislative intention to cause any property to be twice taxed. "Many clauses of the statutes, which, taken separately and literally, would make some property taxable twice or thrice, are not to be taken separately and literally, but are to be understood as subjecting the property they describe to single taxation only, and as designed, by their varied and comprehensive descriptions, to prevent property escaping single taxation." *Robinson* v. *Dover*, 59 N. H. 521, 525; *Berry* v. *Windham*, 59 N. H. 288; *Winkley* v. *Newton*, 67 N. H. 80. Logs held by the plaintiffs a part of the year in Monroe, which were legally taxed elsewhere April 1, are therefore not taxable to the plaintiffs under the provision of the statute by which they may be considered stock in trade.

The plaintiffs had no logs in their boom in Monroe, April 1, 1901, nor at any time since then, and on that ground they suggest that they are not taxable for stock in trade. The general question is whether, if untaxed elsewhere, the logs must escape taxation because, being brought into a town in this state after April 1, they are manufactured and immediately transported out of the state before the expiration of the year. It is not understood that at any time the plaintiffs have had on hand in this state any considerable amount of manufactured lumber, and it is understood that the sole question relates to the taxation of logs as stock in trade.

The subject of taxation is "stock in trade, whether of merchants, shopkeepers, mechanics, or tradesmen, employed in their trade or business; . . . and, for purposes of taxation, raw materials and manufactures of any manufactory, wood, timber, logs, and lumber, manufactured or otherwise, . . . shall be deemed stock in trade." P. S., c. 55, s. 7, cl. 6. It is obvious that the amount of such materials on hand at any particular time would vary with the business or manufacture. Some trades might have their entire stock of raw material or manufactured goods on hand April 1; some very little, or none at all. The stock in trade of an ice dealer, harvested in the winter for sale in the hot season, if held for distribution to local customers might and probably would be all on hand April 1; while a brickmaker, who manufactured and carried a large stock of brick during a part of the year, might have none on hand April 1.

The tax is assessed, not upon the amount on hand April 1, but upon the amount employed in the trade or business, reckoned at its average value. Except as bearing upon the question of the average amount employed in the business, the amount on hand April 1, whether much or none at all, is immaterial. If A owns a business April 1, the stock in trade of which is subject to taxation, the question is: What is the average amount of the stock in trade, of raw material and manufactured product if a manufacturing establishment, carried by that business year by year? Upon this question the average value during the preceding year is evidence. The taxable value being determined by competent evidence accessible April 1, the validity of the tax is not affected by the destruction or abandonment of the business later in the year. If the plaintiffs' logs were not otherwise legally taxed elsewhere April 1, the plaintiffs' were taxable therefor as stock in trade in Monroe,— the place of manufacture,— although they were not brought into the town until after April 1, and were manufactured and carried out of the state before the expiration of the year. If the plaintiffs, being engaged April 1 in the manufacture of lumber from logs, were taxable for the average amount of the raw material employed in their business, the tax was not rendered invalid because the water in the river failed to bring the logs to Monroe, or the plaintiffs subsequently decided to make other disposition of them. The material question upon the validity of the tax is, whether, April 1, the plaintiffs were engaged in the manufacturing business or the business of booming logs at Monroe. If the plaintiffs in November, 1900, sold their entire business and property to another, they could not be lawfully taxed April 1, 1901, for property owned by and taxable to another. If they sold all but their real estate, they would be taxable only for their

real estate. Evidence of a sale and of ownership and control by another would be conclusive evidence that the plaintiffs were not carrying on the business of keeping logs in a boom in Monroe, or of manufacturing lumber at a sawmill there. But it was not necessary for the plaintiffs to sell to another in order to cease doing business. A cessation of the operations of the business with an intention not to engage therein, held April 1, would be as conclusive evidence from which a similar abandonment could be found. Whether the plaintiffs, April 1, 1901, were engaged in the business of keeping logs and manufacturing and storing lumber, so as to be taxable for the average stock on hand for the year, is a question of fact. The agreed facts, that the mill was shut down in November, 1900, and was not run in the plaintiffs' business again or during 1901, and that the plaintiffs had not logs in their boom, or stock in trade in Monroe, April 1, 1901, or since, are evidence that the plaintiffs had ceased doing business in Monroe before April 1, and were not taxable for stock in trade. This evidence may be conclusive, but is not necessarily so. On the other hand, the fact that the plaintiffs had, on April 1, the mill and booms,— the machinery for doing the business upon which they had previously paid a tax for stock in trade without objection,— and that they gave no notice to the selectmen of their intention of abandoning the business in which they had been engaged, is evidence that they had no such intention. However clear the fact may be, it is not the province of this court to pass upon evidence, and the case contains no agreement authorizing such action. For anything that appears, the facts recited up to April 1 may have been the usual course of business. It appears that the logs every year all came into the plaintiffs' boom after April 1, and were all manufactured into lumber and transported to Vermont before April 1 of the following year. So far as appears, the situation and the plaintiffs' intention April 1, 1901, may have been precisely what they were April 1, 1900, and in previous years. The plaintiffs may have been engaged in the business of manufacturing lumber to as great an extent when the tax complained of was assessed as they ever were, or could be at that time in the year. If they were so engaged, they were properly taxable for stock in trade for logs not otherwise taxed, at the average amount employed in their business. The tax then valid was not rendered invalid by the subsequent abandonment or destruction of the plaintiffs' business. What was done or was not done after April 1 in the business is immaterial, except as evidence of the plaintiffs' intention, April 1.

The amount of the selectmen's appraisal of all the property in the town in 1901 did not affect the amount of the defendants'

state or county tax for that year, which was settled by the apportionment made by the legislature in 1899. Laws 1899, *c.* 54; P. S., *c.* 14, *s.* 1. The fact offered to be proved, that the appraisal complained of was included in the total appraisal returned by the selectmen to the secretary of state, has no bearing on the plaintiffs' equitable right to an abatement, because the defendants are in no way affected by the fact.

Upon a petition for abatement of taxes, such order is made as justice requires. P. S., *c.* 59, *s.* 11. The plaintiffs are not wronged if no more than their just share of the public burden has been assigned to them. Justice does not require that, because of error of fact or law made by the assessors, any part of the burden properly belonging to the plaintiffs should be imposed upon other taxpayers. If the whole tax assessed against the plaintiffs does not exceed the sum which they ought to pay, they are not entitled to an abatement because a part of the tax is erroneously assessed. Justice does not require the correction of errors in the assessment whose joint effect is not injurious to the plaintiffs. *Amoskeag Mfg. Co.* v. *Manchester*, 70 N. H. 200, 205; *Edes* v. *Boardman*, 58 N. H. 580, 588. It is therefore competent for the defendants to show that the total tax assessed against the plaintiffs does not exceed their share of the public burden, upon a proportional valuation of all their taxable estate.

*Case discharged.*

All concurred.

---

### MEMORANDUM.

Chief Justice BLODGETT resigned his office on the twenty-second day of April, 1902, the resignation taking effect on the first day of July.

On the thirteenth day of May, 1902, Mr. Justice PARSONS was appointed chief justice of the court to fill the vacancy occasioned by the resignation of Chief Justice BLODGETT; and on the same day Mr. GEORGE HUTCHINS BINGHAM was appointed an associate justice of the court to fill the vacancy occasioned by the appointment of Mr. Justice PARSONS to be chief justice.