## MELVIN v. WEARE.

*Abatement of taxes—Returning invoice.*

When a person renders a true account of the polls and ratable estate for which he is liable to be taxed, upon the personal application of the selectmen, and the same is received by them without objection, he will not be required to render a second account by reason of a public notice by the selectmen, subsequently posted, of the time and place appointed by them to receive an account of the polls and taxable property in their town.

When an application is made to the selectmen for an abatement of a tax, the applicant is not bound to show cause for such abatement until they afford him an opportunity to be heard.

If the selectmen neglect unreasonably to afford such opportunity, the applicant may apply by petition to the circuit court for such abatement.

When application by petition is made to the circuit court for the abatement of a tax, without application being first made to the selectmen, and no objection is taken by the town until the report of the committee to whom such petition is referred by the court comes in, whether the objection will not be regarded as waived, *quære.*

FROM HILLSBOROUGH CIRCUIT COURT.

PETITION, for the abatement of taxes, entered at September term, 1874.

On April 1, 1874, and for a week following, the selectmen of Weare, from day to day, called upon the property-holders in town to ascertain facts from which to make their inventory. April 2 they called upon Melvin to ascertain from him what personal and real estate he owned

in town liable to be taxed. There was nothing said about his making a statement under oath relative to his property liable to be taxed. He, upon inquiry, said that his real estate was the same as it was the year before, and it was assessed upon the same valuation. April 13 the selectmen posted a notice at five public places in town, of which the following is a true copy:

"To the inhabitants of the town of Weare, and all persons liable to be assessed therein:

"The undersigned will receive an account of the polls and taxable property in said town, at the town-clerk's office in said town, on the twentieth day of April inst., from ten o'clock in the forenoon to three o'clock in the afternoon, at which time and place such account is required to be produced.

"Witness our hands at said Weare, this thirteenth day of April, 1874.                                        A. H. WOOD,
                                                S. H. DOW,
                                                Selectmen of Weare."

The selectmen were in session agreeably to said notice, and for the day or two succeeding. Melvin did not appear, nor any one in his behalf, on either of said days. The first notice of dissatisfaction on the part of Melvin was an application for abatement by his attorneys. An application was afterwards made to the court, and referred to a committee, which application and report are made a part of this case.

For the purposes of this case the foregoing facts were agreed to.

The questions of law arising were transferred to the superior court by FOSTER, C. J.

*Cross & Burnham*, for the plaintiff.

*Morrison & Hiland*, for the defendants.

SMITH, J. The defendants object that the plaintiff is not entitled to be heard upon this petition, because he has not complied with the requirements of ch. 51, sec. 4, of the General Statutes. The plaintiff insists that this objection comes too late. No question is made that the plaintiff applied to the selectmen to abate the excessive tax of which he complains, and that this petition was seasonably filed in court because of the neglect of the selectmen to grant the relief prayed for. No objection was made, such as is now raised, when the petition was referred to a committee, nor at the hearing before the committee. All the facts were known to the defendants; and, if the defect were such that it could have been obviated if the objection had been taken earlier, it would be unjust to allow them to compel the plaintiff to incur the expense and trouble of a hearing, and take their chance of a favorable result, and, upon the coming in of the report, raise an objection which ought to have been raised in the outset. *Wentworth* v. *Farmington*, 51 N. H. 134, and cases cited. But the defect, which it is claimed exists here, is one that could not have been obviated if this objection had

been taken earlier. There is no provision of the statute which allows the plaintiff to maintain this petition, unless he has complied with the requirements of the above-named section. But we have no occasion to inquire whether the objection is one that can be raised at this stage of the proceedings, or whether the defendants waived the objection by not making it sooner, because it appears the plaintiff did comply substantially with all he was required to do.

The statute above referred to—Gen. Stats., ch. 51, sec. 4—requires every person liable to be taxed to exhibit to the selectmen, at the time and place appointed by them for receiving an account of the polls and taxable property in their town, or upon personal application to him by the selectmen, or either of them, a true account of the polls and estate for which he is there liable, either in his own right or otherwise, and on oath if required.

By sections 10 and 11 of chapter 53, the selectmen, for good cause shown, may abate any tax assessed by them or their predecessors. If they neglect or refuse so to abate, any person aggrieved, who has complied with the requirements of sec. 4, ch. 51, within nine months after notice of such tax and not afterward, may apply by petition to the supreme court in the county at a trial term (now circuit court), who shall make such order thereon as justice requires.

It seems the selectmen of Weare called upon the plaintiff "to ascertain from him what personal and real etate he owned in said town liable to be taxed." Nothing was said about his making a statement under oath. We may assume that the account he gave of his personal estate was correct, as no question is made about it. "He, upon inquiry, said that his real estate was the same as it was the year before." His answer was equivalent to saying he owned the same real estate for which he was taxed the year previous. What this was would appear upon the records of the town containing the invoice and assessment for 1873. If the selectmen had objected, perhaps a verbal account would be held insufficient. But no objection was made—at least, none appears. He was accordingly assessed upon the same real estate that he was assessed for in 1873. The defendants do not claim that he was taxable for any other, or that the account he rendered was false, or in any respect incorrect. Nor does the plaintiff claim that he was taxed for any property for which he was not taxable : he only complains that it was valued too high. From the way the case is drawn, we must understand that the selectmen were satisfied with the account he gave, and that Melvin understood they were satisfied to receive his statement for an account of his taxable property.

In *Tucker* v. *Aiken*, 7 N. H. 113, the account or statement made by him (Tucker) to the selectmen was not correct, in that he returned his bank stock at $2,000, when in fact he owned such stock to the amount of $7,000 ; and therefore it was held that he was properly taxed for $7,000. In *Walker* v. *Cochran*, 8 N. H. 166, a member of the plaintiff's family, in his absence, gave in, among other stock, one cow,

and two heifers three years old. But the selectmen taxed him for two cows and two heifers. The jury found he had but one cow. The court held that, as the selectmen received the invoice without objection, and never called upon Walker further or gave him notice to appear, they could not tax him beyond the invoice so given in, even if it was erroneous, unless upon a discovery of some fraudulent concealment.

There is nothing in this case which excludes the inference that the selectmen of Weare accepted the statements of Melvin as an account of his property liable to taxation, which they might require him to exhibit. The selectmen may seasonably give notice of a time and place to receive an account of the polls and taxable property in their town by posting advertisements, and they may also make personal application to any inhabitant for such account. The selectmen may give such public notice, or they may make personal application to each voter; and they may do both, or they may at their pleasure do neither. If the response made to the public notice is not satisfactory to them, they would probably resort to the mode of making personal application. But when they first make personal application to an inhabitant, and obtain from him a correct invoice of his taxable property,—one with which they are satisfied, and one with which he understands they are satisfied,—it would seem to impose upon him a useless labor to require him to appear again before them in response to a public notice to give in the same invoice a second time. In this case, I think Melvin might well understand, when the selectmen posted their notices dated April 13, that, in the absence of any intimation that they were dissatisfied with his invoice given in on the second of April, he was not expected and would not be required to render a second invoice. Having rendered an invoice that was correct, and one that was accepted, the statute did not impose on him the duty of exhibiting a second one.

The defendants also object that the plaintiff cannot maintain this petition because he did not show any good cause to the selectmen for abating any portion of his tax. There is nothing in the agreed case that shows how this was. The case finds, that " the first notice of dissatisfaction on the part of Melvin was an application for abatement by his attorneys," and " an application was afterwards made to the court, and referred to a committee." This petition, which is copied in the defendants' brief, appears to be in proper form, is dated July 23, 1874, and no question is made but that it was seasonably presented. If the selectmen resided in different parts of the town, as those officers frequently do, it might be, if a case were presented, that we should feel compelled to hold it to be the duty of the selectmen to appoint a time and place for a hearing, rather than the duty of the petitioner, after filing his petition, to seek out each member of the board, or a majority of them, for an opportunity to be heard. The legislature could hardly have intended that the court should look into the evidence produced before the selectmen, to see whether there was " good cause shown." The abatement of a tax by selectmen is a judicial act, which cannot be revised except by filing a new petition in the circuit court, the pro-

ceeding being in the nature of an appeal. The necessities of the case will not admit of great delay in the preliminary proceedings.

I think it must be understood, that, when an application is made to the selectmen for the abatement of a tax, the applicant cannot reasonably be required to show cause for such abatement until they take some steps to afford him a hearing, and that an unreasonable neglect so to do will entitle him to apply to the circuit court for the relief sought. And further: it will probably be found, upon further examination, that these defendants have waived this objection by not taking it before this petition was referred to a committee.

CUSHING, C. J. The material fact in this case is not expressly found by the committee to whom the matter was referred, neither is it expressly stated in the agreed case, *i. e.*, whether what was done on the second day of April, 1874, was considered by the petitioner and accepted by the selectmen as a rendering of his inventory. In so far as it is the province of the court in cases of this kind, in the last resort, to find the facts, I have no difficulty in this case in finding this fact to be so;—and this being so, the petitioner has complied with the conditions necessary to entitle him to file his petition for abatement.

In Gen. Stats., ch. 233, provision is made for hearing by the selectmen, or other town officers, in all cases where the rights of individuals are concerned. By section 5 of the same chapter, the same rule shall apply to all town officers applied to, to determine any fact affecting the rights of individuals. An application to the selectmen for an abatement of taxes seems to be most emphatically one of those applications embraced within and intended by this section. It was clearly the duty of the selectmen, when application was made to them by the petitioner for an abatement of taxes, to have appointed time and place and given notice for a hearing. I think that when the petitioner applied, he had done all which in the first instance was necessary for him to do, and that therefore he is entitled to maintain his position. I am aware that it may appear to be giving great importance to an application for abatement of taxes, and making a great deal of trouble about a very simple matter. It does not, however, appear so to me. The adjustment of the invoices preparatory to the assessment of taxes is a matter of very great importance; and whenever any party is dissatisfied with the inventory and appraisal of his property, I think there should be an opportunity for a careful investigation, and for other citizens to be heard if they desire it. A public notice for such a hearing would afford such opportunity.

LADD, J. As I understand this agreed statement of facts, no one is finding any fault with the inventory upon which the tax of 1874 was assessed. Of what possible consequence is it, then, whether there was a literal compliance with Gen. Stats., ch. 51, secs. 3 and 4, or not? The selectmen, by personal application, appear to have obtained an inventory with which they were satisfied, and upon which they assessed

the tax.   Neither they nor the petitioner are seeking to have that inventory changed.   It seems to me very clear, that if there was any informality in the course pursued (and I hardly see how it can be contended that there was), that informality was waived and cured by the acquiescence of all the parties concerned.

Further : I think the objection comes too late.   If the town or the selectmen desired to avail themselves of the objection that there had not been a compliance with section 4 of chapter 51, their time to make it was before the petition was sent to a committee for hearing. It would be unjust, and contrary to the practice in all analogous cases, to permit the town to go into a hearing, and take the chances of a report in their favor, and then, when they find that it is against them, snatch from the petitioner the fruits of his victory by a technical matter of this kind.   I think their conduct amounted to a waiver of the objection, admitting that it would have been available if taken at any stage of the proceedings.

*Case discharged.*