June 14, 1876. } THE MANCHESTER MILLS *v.* THE CITY OF MANCHESTER.

*Abatement of taxes—Valuation.*

57  309
f70  206
57  309
j74  88

The petitioners alleged that their factories and machinery, land and buildings, according to the valuation and taxation of other property, were taxed too high. The factories and machinery were appraised at one sum, and the land and buildings at another. A committee appointed by the circuit court were directed to report the value of similar estate in M. other than the plaintiffs', compared with its assessed value in 1874. The committee reported on the assessed value of other similar estate, to wit, of other manufacturing establishments, and also of other similar estate, to wit, all the real estate except manufacturing establishments.

*Held,* that the admission of evidence of the value of real estate, other than manufacturing establishments, was no ground of exception.

*Held,* that this court would not examine affidavits for the purpose of determining the correctness of the report in matters of fact, that being more properly the province of the circuit court.

*Held,* that the report might be recommitted, at the discretion of the circuit court, for explanation or further hearing.

*Held,* that, if the assessors intentionally appraised other property in the city

---

* SMITH, J., did not sit.

generally at less than its true value, and at the same time appraised the property of the plaintiffs at its true value, or higher in proportion than other property in the city generally was appraised, "justice requires" that upon a petition under Gen. Stats., ch. 53, sec. 11, an order be made reducing the plaintiffs' tax so that their property shall bear no more than its equal proportion of this public burden, according to its real value.

From Hillsborough Circuit Court.

Petition, for abatement of taxes, representing that the assessors of Manchester, in April, 1874, assessed a tax upon the petitioners' property in said city, under the name of the Manchester Print Works and Mills, rating the land and buildings of the corporation at $400,000, and the factories and machinery at $950,000, and assessing a tax upon that valuation.

The petitioners represent that according to the valuation and taxation of other property in said city for this and other years, the valuation of the land and buildings should not have been above $150,000, and of the factories and machinery, $500,000; that on July 25, 1874, they made application to said assessors for an abatement of said tax, which was refused.

At the September term of this court the petition was referred to Aaron W. Sawyer and John S. H. Frink, with instructions to report,—

*First.* What was the true value of the plaintiffs' estate, described in this petition, in April, 1874?

*Second.* What was the value of similar estate in Manchester, other than the plaintiffs' (as near as you can estimate it), compared with its assessed value in April, 1874?

*Third.* What was the rate per cent. of taxation in Manchester for the year 1874?

At this term the referees submitted their report as follows:

" Pursuant to the annexed commission, the undersigned referees, appointed by the court in said case, having given the parties due notice of the time and place of the hearing (being duly sworn to the faithful discharge of their duties), and having heard, examined, and considered the allegations and evidence of both parties, do report our finding upon the questions submitted to us in the annexed commission as follows:

" *Question First.* What was the true value of the plaintiffs' estate, described in the said petition, in April, 1874?

" *Answer.* The referees find that the true value of the plaintiffs' estate, described in said petition, on the day named, was $1,800,000.

"*Question Second.* What was the value of similar estate in Manchester, other than the plaintiffs' (as near as you can estimate it), compared with its assessed value in April, 1874?

"*Answer.* The referees find that the assessed value of other similar estate, to wit, of other manufacturing establishments in said Manchester, on the day named, was seven tenths of its true value; and the

referees further find, that the assessed value of other similar estate in said Manchester, to wit, of all the real estate, excepting manufacturing establishments, on the day named, was one half of its true value.

"*Question Third.* What was the rate per cent. of taxation in Manchester for the year 1874 ?

"*Answer.* The rate per cent. of taxation in Manchester for the year 1874 was two dollars and forty-six cents upon the hundred dollars.

"The plaintiffs introduced, against the defendants' exception, evidence of the value of other real estate (excepting manufacturing establishments) situate in various parts of said city of Manchester; and the referees having received said evidence, at the request of the defendants report their exception thereto."

The counsel for the city thereupon filed the following objections to the report, and moved that the same be set aside; and in support of said motion they also filed the papers annexed thereto, and marked respectively A, B, C, D.

The report of the treasurer of the Manchester Print Works, at a meeting held in Boston, July 9, 1873, may be used in argument.

The city of Manchester objected as follows : " The commissioners having made a report at the present term, the petitioners ask an abatement of $15,276.60 of the whole tax, which motion is resisted by the city.   The city moves that the report be set aside, (1) because the commissioners allowed evidence to be introduced not warranted by their commission; (2) because of manifest error on the part of the commissioners, as shown by the affidavits herewith furnished; (3) the city also moves that with or without setting aside the report, the cause be sent to a jury; (4) and in case the last motion is not granted, that the court receive and consider testimony by the defendants in connection with the report; (5) the city also object to any abatement, because the tax was paid without protest or objection before the present proceedings were commenced; and the city has paid over large sums to the state and county upon the basis of that valuation."

Certain *ex parte* affidavits are submitted on both sides for the purpose of proving or disproving the third objection.

*Ira A. Eastman, Cross & Burnham,* and *S. N. Bell,* for the plaintiffs.

*C. R. Morrison* and *Briggs & Huse,* for the defendants.

CUSHING, C. J.   The petitioners represent that at the time of the assessment complained of their land and buildings were valued at $400,000, their factories and machinery at $950,000; and they allege that this valuation, according to the valuation of other property in this and other years, was much too large;—and for this reason they claim an abatement of the tax.   It is worth while to note in the beginning what the ground was on which they claim their abatement of taxes.   It was not that their property was appraised too high according to its real value, or

even high enough, but that it was appraised too high according to the valuation of other property. The city of Manchester does not appear to have made in the outset any objection to the lawfulness or justness of this claim. The record does not show that it was objected on the part of the city that this property ought to be valued at its exact market value, while all the other property in Manchester was valued at a much less rate; but at the time when the commission was issued it was apparently conceded that if this property was really valued at a much higher rate than other property for the purpose of taxation, it would be just that it should be abated.

Nor is it easy to see how the city could contend that this claim of the petitioners was not just, assuming that the facts on which it rested were true ; and I think it would be difficult so to contend. I believe it is admitted to be just and lawful that each person should bear the burden of taxation equally with all the others. In order to produce this result, it is necessary that all property should be valued proportionally ; and if for any reason, whether to prevent the city from being rated too high by the legislature in fixing the share of state and county taxes which each town and city is required to pay, or for any other reason, the authorities had valued all other property at less than its true value, the petitioners' property for purposes of taxation ought to be valued at the same rate.

The law requires that the circuit court shall make such order on this petition as is just. I think we ought to hold as law, that, whenever it shall be made to appear that the property in any town or city has been designedly appraised at less than its true value, the question to be determined is, whether the property on which the petitioners claim an abatement of tax has been over-valued according to that rate.

If it were true, that, because the law requires that all property should be appraised for the purposes of taxation at its fair cash value, the court is bound to presume that this has been done, and is therefore estopped from inquiring into anything but the actual value of the property in question, then the petition ought to have been dismissed instead of being sent to a commission, because it requires of the court what the court, according to that view of the law, cannot lawfully grant.

The petition, however, was neither dismissed nor amended; and we are therefore to understand that when the commission issued it was then understood by all the parties that if the allegations in the petitions were true it would be just that the tax should be abated.

The committee having reported, the defendants move to set aside the report, on the ground that evidence was admitted which ought not to have been ; and we learn from the report that this evidence related to the value of other real estate, excepting manufacturing establishments, situated in various parts of the city of Manchester ;—and this is the first question of law presented. Is the court to reject this whole report, or any part of it, because such evidence was admitted ? The objection in this form is not that the committee have reported facts which they ought not to have reported, but that they have admitted evidence

which they ought not to have admitted; and evidence of such a character as that having been received, there would be danger that it would improperly influence the minds of the committee, and so make their report worthless in regard to the matters which they were required to investigate.

Assuming for the present that the court does not wish to know how real estate, situated in different parts of the city, is valued, are we in condition to say that the hearing of this testimony has endangered the correctness of the committee's conclusions on those matters which the court does desire to know, so that for this reason the whole report ought to be set aside?

I am not sure that I rightly understand the use of terms by the petitioners and by the committee. Taking the whole together, I see that the petition speaks of the property as divided into two classes,—*i. e., factories and machinery,* and *land and buildings.* The committee appear to have described the property consisting of factories and machinery, which they examined as manufacturing establishments, and the other property consisting of land and buildings, which they examined as real estate. I do not think it possible to put any other construction upon the report, without doing violence to the language of the commission and report taken together. If there is really any doubt about this, the report ought to go back to the committee for explanation; but until it shall be so explained I shall understand that the commissioners, when they speak of manufacturing establishments, mean property analogous to that which in the petition is classed as factories and machinery, and when they speak of real estate, they mean property analogous to that which in the petition is classed as land and buildings.

Would the inquiry into the value of real estate in different parts of the city, whether similar or not to the land and buildings of the petitioners, exercise such a disturbing influence on the minds of the committee as to destroy the value of the report as to those matters which they were directed to report upon? I cannot see that it would. The petition makes two classes of property,—land and buildings, and factories and machinery. I suppose a factory is a building, but I understand from the petition there are other buildings and land, whether used for boarding-houses or storage or cultivation, which are different from factories, and perhaps subject to different considerations. I am quite unable to see, as matter of law, that the land and buildings of the petitioners are not similar to the other lands and buildings examined by the committee; but I am quite ready to believe, as matter of fact, when the committee say, as I understand they do substantially, that they have inquired into the value of similar real estate, that this is true, and that the committee justly instituted comparisons between the appraisal of the land and buildings of the petitioners and other lands and buildings in different parts of the city, even if it were true that some of the "lands and buildings" examined were not exactly like the "land and buildings" of the petitioners. I can therefore find nothing, as

matter of law, to complain of in this proceeding; and I think it would be useful for the circuit court, in determining the matter of fact which it has before it, to consider and weigh this part of the report.

It is claimed that the commissioners have gravely erred in their report, as appears by certain matters appended to the motion.

It is not the province of this court to determine these matters of fact, neither is it apparent to me how, without all the evidence before them which was before the commissioners, we can determine how much weight is due to the affidavits appended to the case, or how they bear upon and affect the other evidence in the case.

The circuit court may send the matter back again to the commissioners for the purpose of obtaining further information in regard to any matter upon which further information is desirable.

It appears to me that the matters on which the committee were directed to report do not cover the whole ground. The allegation in the petition is, that the property of the petitioners is appraised too high, according to the valuation of other property. The petition does not say, as it appears from the printed case, that the appraisal is too high according to the valuation of other similar property, but it is too high according to the valuation of other property.

On what possible ground could a board of assessors be justified in taxing the property of manufacturing corporations, and appraising it at seven tenths of its true value, and real estate at one half its true value? I hold that, as matter of law, the court, in order to do what justice requires, ought to ascertain the value of this property according to the valuation of other property. If it be true that some property is intentionally appraised at seven tenths of its true value, and other property at one half of its real value, and still other property at a different rate, the property of these petitioners ought to be appraised at what would be a fair average rate.

If it turns out, on examination, that there is a settled usage in regard to this matter, and that the assessors of the city of Manchester deliberately, and as a rule, appraise property at less than its true value, then, as matter of law, I hold that this property ought to be appraised in the same way; and if it be true that by accident or mistake or erroneous judgments the property of these petitioners has been appraised at a higher rate than other property, then I think that, as matter of law, it is just that the tax should be reduced. Whether the report furnishes to the circuit court all the needed information, is not matter of law, but matter of fact, to be determined by that court.

The last objection is, as I understand it, not to the report, but is in the nature of an estoppel. It goes upon the ground that the petitioners, by paying their tax without protest, have thereby induced the city materially to change its position, and to pay over large sums of money in taxes to the state and county on the basis of that valuation.

If there be any estoppel here, it must arise on an investigation and disclosure of facts in the circuit court. From what we know of the law, it seems impossible that such facts should exist. The amount of tax

to be raised by each city and town for the use of the state and the county is determined by act of the legislature. This was determined by an act of the legislature, passed in 1872. By this act was determined the amount to be contributed by each city and town towards the state tax; and by Gen. Stats., ch. 25, sec. 9, the county taxes are to be apportioned by the same rule. There is no mode known to me by which any city or town can obtain any reduction of its state or county tax, by reason of any over-valuation or over-taxation of any individual or of any corporation for the purpose of raising the state or county taxes. If the report of the committee is correct, that at present the assessed value of the estate of manufacturing corporations in Manchester is seven tenths of its real value, and that of other estate one half of its real value, it would seem evident enough that the authorities of the city have already taken sufficient precaution against its being overrated in the state valuation. However that may be, it is clear that the payment of this tax by the Manchester Mills, with or without protest, could have had no possible effect in inducing the city to pay or withhold payment of the full amount of its state and county taxes. There is, therefore, no ground for the claim of an estoppel.

The circuit court is the trier of the facts. If on the evidence already furnished it finds itself desiring further information, it can say so, and either recommit the case, or perhaps hear evidence itself. But in the end the question should be, whether the property of the petitioners is rated too high according to the valuation of other property.

LADD, J., concurred.

* RAND, J., C. C. I see no ground for setting aside the report of the commissioners in this case.

1. They were warranted in receiving the evidence objected to, by the decision in *Cocheco Co.* v. *Strafford*, 51 N. H. 455.

2. It is impossible for the court to say, upon *ex-parte* affidavits, that there was " manifest error on the part of the commissioners." The case above cited is also sufficient authority for not sending this cause to a jury.

3. The General Statutes, ch. 52, sec. 1, provide that " The selectmen shall appraise all taxable property at its full and true value in money; " and by an amendment passed July 4, 1872 (ch. 31, sec. 1), the words " as they would appraise the same in payment of a just debt due from a solvent debtor " are to be inserted after the word " money," and before the next word, in the General Statutes. And by an act passed July 10, 1874 (ch. 99, sec. 1), selectmen and assessors are required to take the following oath:

"We, the selectmen and assessors of ———, do solemnly swear, that in making the invoice for the purpose of assessing the foregoing taxes

---

* SMITH, J., did not sit.

we appraised all taxable property at its full value, and as we would appraise the same in payment of a just debt due from a solvent debtor."

This legislation is very clear and emphatic, and the policy of the law should be carried out by selectmen and assessors.

It should be regarded as a very reprehensible practice to appraise property for the purposes of taxation otherwise than according to its real value ; and I think, myself, that the attention of the attorney-general should be called to the practice, with a view to the institution of prosecutions for perjury.

4. It is no objection to the abatement that the tax was paid without protest, and that the city has paid it over to the state and county. It is not easy to see how the amount paid over to the state and county could have been in any way affected by the amount paid to the city by the plaintiffs.

*Motion denied.*