Hillsborough, }
  Dec., 1899.  }

AMOSKEAG MANUFACTURING CO. *v.* MANCHESTER.

The finding of referees that an incorrect statement of the amount of property in a tax inventory was made in good faith, with no intent to mislead the assessors, is conclusive as to the purpose with which such statement was made.

An objection to the sufficiency of a description of real estate in a tax inventory will be regarded as waived when made for the first time at the law term.

Over-valuation of some classes of a taxpayer's estate does not entitle him to an abatement if the error is neutralized by an under-valuation of other property.

An abatement of taxes is granted on the ground that the sum assessed is in excess of the petitioner's share of the common burden, and not because the appraisal of his estate is dissimilar to that of other taxpayers in the same business or owning the same kind of property.

PETITION, for abatement of taxes.    Trial by referees, who reported in favor of the plaintiffs.    In 1897 Herman F. Straw, as

clerk and agent of the Amoskeag Manufacturing Company, seasonably made to the assessors of Manchester, under oath and on the blank prescribed by law, the return or inventory required by law of the estate of the plaintiffs on which they were liable to taxation, in which under proper heads he valued their property as follows:

| | |
|---|---:|
| Factories and machinery . . . . . | $2,250,000 |
| Outside lands and buildings . . . . | 500,000 |
| Locks and canals . . . . . . | 250,000 |
| Stock in trade . . . . . . | 1,250,000 |
| | $4,250,000 |

At the time the inventory was made, Straw knew that the plaintiffs had in Manchester, during the year ending April 1, 1897, stock in trade of the average value of $3,100,000 to $3,200,000, and he stated its value for taxation at $1,250,000 because he believed, " after thorough investigation, that $1,250,000 was valuing the stock in trade of said company in Manchester at that time fully as high and at even a higher rate per cent than any stocks in trade in Manchester were valued at for taxation."

Upon these facts the defendants claimed that the plaintiffs were not entitled to relief, on the ground that the return made by Straw was not a compliance with the requirements of chapter 57 of the Public Statutes. The referees found that the return was received by the assessors without objection, or request for change and correction; that the assessors did not request or receive from the plaintiffs any information concerning the actual value of their stock in trade, other or further than that contained in the inventory, until Straw testified at the trial that the average true value of the plaintiffs' stock in trade for the year ending April 1, 1897, was $3,247,971; that the return of the plaintiffs' stock in trade of the value of $1,250,000 was made in good faith and without intent to mislead the assessors, and they were not misled by it.

*David Cross* and *Streeter, Walker & Hollis*, for the plaintiffs.

*George A. Wagner* and *Elijah M. Topliff*, for the defendants.

PARSONS, J. " Selectmen, for good cause shown, may abate any tax assessed by them or by their predecessors." P. S., *c.* 59, *s.* 10. " If they neglect or refuse so to abate, any person aggrieved,

having complied with the requirements of chapter fifty-seven, may, within nine months after notice of such tax, and not afterwards, apply by petition to the supreme court, . . . who shall make such order thereon as justice requires." P. S., *c.* 59, *s.* 11. The defendants contend that the plaintiffs cannot maintain this petition because of failure to comply with the requirements of chapter 57 of the Public Statutes; but they appear to concede in argument that " fraud, accident, or mistake are equitable grounds for relief when the petitioner has failed to conform to the statute." Assuming this to be a correct statement of the law (*Parsons* v. *Durham, ante, p.* 44), the objection to the maintenance of the petition is disposed of by the findings of the referees. Whether any inventory was returned, whether any statements made in it were incorrect, whether if incorrect such statements were made in good faith, in honest mistake, or were false with fraudulent intent, are all questions of fact which are not open here. Consequently we are not at liberty to consider the defendants' argument that " the inventory returned was a fraudulent deception intended to mislead the assessors." Until the findings of fact made by the referees are set aside by appropriate proceedings at the trial term, as either contrary to or against the weight of the evidence, such findings are conclusive. *Searles* v. *Churchill,* 69 N. H. 530. It appears that the inventory or return prescribed by law was seasonably made, under oath, to the assessors. In answer to the interrogatory calling for the average value of the plaintiffs' stock in trade during the preceding year, the sum named was only about one third the actual value known to the agent making oath to the inventory. Such statement was not the statement the law requires, which was its full and true value in money. But the referees find that the statement was made, as it was made, in good faith and with no intent to mislead the assessors, and that they were not misled. If made in good faith, it was an honest statement. An honest statement is not and cannot be a false statement. As there was no mistake or misunderstanding in the mind of the agent who made the inventory as to the actual value of the stock, the statement made could have been made honestly only through a misunderstanding of the import of the question in answer to which the statement was made. It appeared that the illegal action of the assessors in Manchester, in failing, as required by law, to appraise all taxable property at its full and true value in money (P. S., *c.* 58, *s.* 1),— a dereliction in duty not peculiar to Manchester assessors,— had created a distinction known to those interested in taxing questions between the actual value of property and the sum at which it should be appraised for taxation, the latter being known as its taxable value. Fundamental principles

of justice and equality, recognized in the constitution and numerous decisions of the court, have established that each taxpayer is entitled to have his property valued for taxation by the same standard as that of other taxpayers. If Mr. Straw, the plaintiffs' agent, understood the interrogatory he essayed to answer to call for the taxable value of the plaintiffs' stock in trade as that term was understood in Manchester, and had exercised due diligence to ascertain what ratio such taxable value bore to the real value of similar property, he might in good faith have answered the question by a statement of the sum at which his investigation led him to believe the plaintiffs' stock in trade should be appraised, in view of the illegal action of the assessors in the appraisal of the property of others. Whether he did honestly make the statement in this way was a question for the referees. They have answered the question in the affirmative, and it cannot be said as matter of law that their finding is wrong. The statement complained of was incorrect, was not a compliance with the statute, and was not legally justified by the illegal action of the assessors. But as the referees find in substance, on all the evidence, that the making of the statement was an honest mistake, upon the defendants' concession as to the law, and the authority of *Parsons* v. *Durham, ante, p.* 44, decided at this term, such mistake does not deprive the plaintiffs of their right of appeal.

The only objection to the inventory that appears to have been insisted upon before the referees, or that was suggested before us until after the case was submitted, related to the statement as to the stock in trade. In the defendants' last brief, recently filed, claim is made that the inventory does not sufficiently describe the plaintiffs' real estate. This objection was known to the defendants before the trial commenced. It involves a question of fact and should have been taken before the referees, and, not being suggested until this late day, must be regarded as waived. *Melvin* v. *Weare*, 56 N. H. 436, 441.

The remaining question is what "order justice requires" upon the facts found. This question is for the court. *Cocheco Mfg. Co.* v. *Strafford*, 51 N. H. 455, 475. The defendants urge that the report of the referees should be set aside because different rates of taxation were imposed upon different species of property. But there is no occasion to set aside the report, or even to recommit it, should the method suggested by the referees for determining the amount of the abatement to which the plaintiffs are entitled not meet our approval.

The report contains, clearly stated, all the facts essential to the present inquiry. The case does not show any motion for judgment at the trial term, or order as to what judgment should

be rendered upon the facts found. The report is before us, and the questions arising thereon have been fully argued. We have, therefore, considered the principles governing such order as must finally be made.

The referees have appraised the plaintiffs' taxable estate in three classes,— real estate, stock in trade, and other personal property. The plaintiffs claim that to determine the proportional appraisal upon which the tax against them should have been assessed, their real estate should be appraised at six tenths of its true value, their stock in trade at one third, and their other personal property at its full value, the referees having found that the assessors' valuation of other property than that of the plaintiffs of these classes was in such proportions to its true value. The defendants claim that the plaintiffs' whole property should be appraised at sixty per cent of its true value as found by the referees.

The general principles of uniformity and equality essential to legal taxation under our constitution and laws have been so fully and frequently elaborated "during the last fifty-three years" that any discussion at the present time of principles no longer "a subject of debate or doubt" would serve no useful purpose. *State* v. *Jackman*, 69 N. H. 318 ; *Winkley* v. *Newton*, 67 N. H. 80 ; *State* v. *Express Co.*, 60 N. H. 219, 236 ; *B., C. & M. Railroad* v. *State*, 60 N. H. 87, 94 ; *Robinson* v. *Dover*, 59 N. H. 521, 525 ; *Berry* v. *Windham*, 59 N. H. 288, 289 ; *Gould* v. *Raymond*, 59 N. H. 260, 275 ; *Bowles* v. *Landaff*, 59 N. H. 164, 190 ; *Edes* v. *Boardman*, 58 N. H. 580, 587 ; *Opinion of the Justices*, 4 N. H. 565, 569.

It is, in fact, conceded by the plaintiffs "that the constitutional rule of equality requires a proportional and equal valuation of the different kinds of taxable property." It is also true, as claimed in the plaintiffs' brief, that "it is equally elementary that the law requires all property to be appraised at its true value. Yet if A's estate is appraised at that value and all other property in the town of X at fifty per cent of that value, A is entitled to a reduction of his valuation from the legal to the illegal rate." The reason is that in no other convenient way can A's tax on the property owned by him be made proportional to that paid by his neighbors, for the remedy of a reassessment of the whole tax upon all taxable property in the town, upon a legal appraisal at its true value, would be inconvenient and impossible of execution. But it does not follow where A's property is appraised proportionately upon the whole with that of other taxpayers, that if the selectmen have appraised one class of property for which A is taxed to other taxpayers at a lower rate, A is entitled to a reduction on that class to the same illegal rate, and thereby his assessment of the common burden be reduced below his share, and the shares of owners of

other property increased.  All property alike is to be appraised
"at its full and true value in money."  P. S., *c.* 58, *s.* 1.  There is
no foundation for the proposition that owners of one kind of prop-
erty should pay more or less than their share of the common bur-
den because of the character of their estate.  "The statute makes
the proceeding for the abatement of a tax a summary one, free
from technical and formal obstructions.  The question is, does
justice require an abatement?' . . . The justice to be adminis-
tered is to be sufficiently exact for the practical purposes of the
legislature, who did not intend to invite the parties to a struggle
for costs, or a ruinous contention about trifles.  The points to be
considered are such as the nature of each particular case presents.
They cannot be·fixed by an invariable rule." *Manchester Mills* v.
*Manchester*, 58 N. H. 38, 39.  "The question, on appeal, is . . .
whether a share of a common burden belongs to the appellant, and
whether more than his share has been allotted to him. . . . The
right of an appellant to throw any part of his share upon the rest
of the community . . . is not supported by any error of the
selectmen, and is inconsistent with the general theory of taxation
as well as the special provision for such order as justice requires."
*Edes* v. *Boardman*, 58 N. H. 580, 589.

"The court is not authorized to make an order of abatement that
would violate the constitutional right of the other taxpayers . . .
by transferring to them a part of the burden of the plaintiffs'
stockholders."  *First National Bank* v. *Concord*, 59 N. H. 75, 77,
78.  The relief to which the plaintiffs are entitled is such as is
equitable.  *Perry's Petition*, 16 N. H. 44, 48.  Equity requires
that the plaintiffs be relieved by an abatement of such sum as they
have paid in excess of their share of the common burden.  Their
share is such a proportion of the whole tax as the true value of
their property bears to the true value of all the taxable estate in
the city.  If all the other taxable estate in the city except the
plaintiffs' were appraised at its true value, the appraisal of theirs
at a sum equal to the true value of the whole would assign to
them their share of the common burden; and the fact that some
classes of their estate were appraised too high would not entitle
them to an abatement if the error were neutralized by an under-
valuation of other estate.  "Justice does not require the correc-
tion of errors of valuation whose joint effect is not injurious to the
appellant."  *Edes* v. *Boardman*, 59 N. H. 580, 588, overruling
*Dewey* v. *Stratford*, 42 N. H. 282, 289.

Hence, if all the other taxable property in Manchester had
been appraised at its true value in the aggregate, the appraisal of
the plaintiffs' in the aggregate at the true value of the whole
would not have imposed more than their share upon them.  If it

appeared that by errors in valuation some individuals among the remaining taxpayers paid more and some less than their share, that fact could not affect the plaintiffs' obligation to pay their share. If all the remaining taxable estate in the citty were appraised at one half or some other per cent of its true value, and the plaintiffs' whole property at a higher ratio to its true value, it is evident the plaintiffs would be called upon to pay more than their share. In one sense, in this proceeding the plaintiffs are one party and all the remaining taxpayers the other party. The question is, in what way between these two parties the constitutional rule of equality of burden shall be carried into effect. As it appears that by the appraisal made by the assessors the taxable estate in the city other than the plaintiffs' was appraised at less than its true value, the appraisal of the plaintiffs' whole property at the same ratio would assign to the plaintiffs their share of the burden. The plaintiffs are bound to pay their share. An unequal distribution of the remainder among the other taxpayers, because of erroneous appraisals among individual taxpayers, is no reason why the plaintiffs should pay less than their share. If it were, the fact that some individuals pay more would establish with equal certainty the plaintiffs' obligation to pay more than their share. The ground upon which an abatement is granted is the reduction of the plaintiffs' assessment to their share of the tax. It is not granted merely to make their assessment similar with the assessment of other taxpayers in the same business or owning the same property. From the referees' report, the assessed value of all taxable estate in the city other than the plaintiffs', and its true value, is readily computed. The true value of the plaintiffs' whole property is found. Justice requires that it should be appraised for taxation at the same ratio to its true value as the assessed value of all other taxable estate bears to its true value. For the sum paid in excess of the amount of the tax upon such an appraisal, the plaintiffs are entitled to an abatement. The principles upon which this result is reached appear to be conceded; but it is claimed, in substance, that it is settled by judicial decision in New Hampshire that each class of property should be appraised upon a petition for abatement at the same ratio to its true value as other similar property was in fact valued by the assessors. An examination of the cases does not sustain this claim.

This exact question was raised in *Manchester Mills* v. *Manchester*, 57 N. H. 309. It appeared that the assessed valuation of other real estate like the plaintiffs, *i. e.*, other manufacturing establishments, was seven tenths of their true value, and that other real estate was assessed at one half its true value. The court say

(*p.* 314): "On what possible ground could a board of assessors be justified in taxing the property of manufacturing corporations . . . at seven tenths of its true value, and real estate at one half of its true value? . . . The court, in order to do what justice requires, ought to ascertain the value of this property according to the value of other property. If it be true that some property is intentionally appraised at seven tenths of its true value, and other property at one half of its real value, and still other property at a different rate, the property of these petitioners ought to be appraised at . . . a fair average rate." In the cases cited (*Cocheco Mfg. Co.* v. *Strafford,* 51 N. H. 455, and *Manchester Mills* v. *Manchester,* 58 N. H. 38), to sustain the proposition that justice requires the appraisal of the plaintiffs' stock in trade by itself at one third its value, it was not intended to lay down a rule for all cases. The contrary is distinctly asserted. *Manchester Mills* v. *Manchester,* 58 N. H. 38, 39. The only object in those cases was to declare a rule which would do justice, the application of which should require the plaintiffs to pay their share and no more. It was not intended to establish a rule which should relieve the owners of one class of property at the expense of other property holders, and the court were careful to qualify the rule announced as subject to exception in particular cases. In neither of these cases was there any question except the inequality of real estate assessment. The rule adopted covered the question before the court, while the reasoning of those cases sustains the result we have reached.

If the reason of the rule were found in the proposition that similar property should be similarly appraised, no reason can be assigned for including all property taxable as real estate in one class ; for upon that ground no reason exists why the plaintiffs might not claim that their mills and machinery are appraisable only at the ratio of other mills and machinery, their locks and canals and "outside" property at the ratio of other locks and canals and other like property, or why a private dwelling-house should be compared with anything but similar real estate. The divisions and subdivisions that might be made upon the theory of proportional assessment of similar estate would be endless. The error consists in assuming as a principle what was merely a rule found convenient in particular cases to give effect to general principles of uniformity and equality. Certainly, an application of the rule to all the different species of property classed in the statutes under the head of stock in trade (P. S., *c.* 55, *s.* 7, *par.* VI) is sufficient to show its unreasonableness.

The plaintiffs are entitled to an abatement. From the referees report, the average valuation of all other taxable estate in the city

can be determined. At the trial term this question will be heard unless the parties agree, and the amount of the abatement determined upon the foregoing principles.

*Case discharged.*

CHASE and PEASLEE, JJ., did not sit: YOUNG, J., concurred in the last point only: the others concurred.