Coös,
June 27, 1914.

### WHITE MOUNTAIN FUR CO. *v.* WHITEFIELD.

Where foxes are kept in expectation that they will increase and that as they reach maturity they may be killed and their pelts sold for fur, the owner also intending to buy and sell live foxes for breeding purposes, in such quantities and at such times as may seem most advantageous, the animals are not taxable as stock in trade unless the owner's business is that of buying and selling them.

PETITION, for the abatement of a tax. Transferred without a ruling from the December term, 1913, of the superior court by *Sawyer,* J., on an agreed statement of facts.

The plaintiff is the owner of a pack of foxes which it is keeping in "expectation that they will increase, and that as they reach maturity they may be killed and their pelts sold for fur." The plaintiff also intends to "buy and sell live foxes for breeding purposes, in such quantities and at such times as may seem most advantageous to it." The tax which the plaintiff asks to have abated was assessed on these foxes for the year 1913.

*Drew, Shurtleff, Morris & Oakes (Mr. Oakes* orally), for the plaintiff.

*Edgar M. Bowker* (by brief and orally), for the defendants.

YOUNG, J. The defendants concede that foxes are not taxable as such, but contend that these foxes were taxable as stock in trade, under the provisions of subdivision 6 of section 7, chapter 55, Public Statutes. Stock is broad enough to include all useful animals (9 Cent. Dict. 5955, Stock 22); that is, to include the plaintiff's foxes, whether kept for sale or for breeding purposes. But while all stock

is in a sense stock in trade, that term is usually applied to the stock of merchants and tradesmen.   9 Cent. Dict. 5956.   Consequently, if the language the legislature used is to be given its ordinary meaning, that is the sense in which "stock in trade" is used in this subdivision.   The context tends to the same conclusion; for after providing that "stock in trade, whether of merchants, shopkeepers, mechanics, or tradesmen, employed in their trade or business," is liable to be taxed, it goes on to say that "for purposes of taxation, raw materials and manufactures of any manufactory, wood,   .   .   . manufactured or otherwise,   .   .   .   fishing vessels,   .   .   . **or** other vessels,   .   .   .   shall be deemed stock in trade."

The fact that this subdivision says that certain classes of personal property, which are stock in trade when that term is used to include all property employed in any trade or business, are to be deemed stock in trade for purposes of taxation, tends to the conclusion that that term is to be given its limited or ordinary meaning; that is, that by it is intended only personal property employed by merchants, etc., in their trade or business.   As there is nothing to rebut this presumption, it must be held that the only property, in addition to the classes of personal property enumerated in this subdivision, liable to be taxed as stock in trade is that employed by merchants, shopkeepers, mechanics, and tradesmen in their trade or business. Therefore, if it is conceded that these foxes are stock in trade, it will still be necessary to consider whether the plaintiff was a merchant, shopkeeper, mechanic, or tradesman, on April 1, 1913, in order to determine the validity of this tax.

No one contends that the plaintiff was a mechanic within the meaning of the statute.   Was it a tradesman at the time the tax was assessed?   When that word is given its most common meaning, it is synonymous with shopkeeper (10 Cent. Dict. 6416, Tradesman 1); but it is frequently used in the sense of a skilled workman, as, for example, a blacksmith, a carpenter, or a tanner, and the history of the legislation tends very strongly to the conclusion that that is the sense in which it is used in this subdivision.   1 Prov. Laws (Batch. ed.), *p.* 26; Laws, *ed.* 1797, *p.* 203; Laws, *ed.* 1805, *p.* 219; Laws, *ed.* 1815, *p.* 262; Laws, *ed.* 1830, *p.* 555, *s.* 8; R. S., *c.* 39, *s.* 3, *cl.* 4; C. S., *c.* 41, *s.* 3, *cl.* 5;   G. S., *c.* 49, *s.* 5. *cl.* 6;   G. L., *c.* 53, *s.* 6, *cl.* 6;   P. S., *c.* 55, *s.* 7, *cl.* 6.   In short, the history of this legislation tends to the conclusion that by tradesman is intended a mechanic engaged in business for himself.   Whatever the plaintiff's business may have been on April 1, 1913, it is clear that it was not

exercising a trade; that is, that it was neither a mechanic nor a tradesman at that time.

Was it a merchant or shopkeeper? By a merchant, as that term is ordinarily used, is intended a person whose business or occupation is buying and selling commodities. Although every merchant buys and sells commodities, the converse of this proposition is not true; for but very few of those who buy and sell commodities are merchants. Every producer buys and sells commodities, but producers are not merchants within the ordinary meaning of that term. On the one hand, they buy commodities to use in their business, while merchants buy them to sell again. On the other hand, they produce, while merchants buy, the commodities they sell. In a word, they produce commodities, and merchants deal in them. What is true of a merchant is true of a shopkeeper; for whether a person who buys and sells commodities as a business is one or the other depends on the extent—not on the character—of his business. If his business is large, he is a merchant; if small, he is a shopkeeper. 6 Cent. Dict. 3713, Merchant. In short, a person who buys and sells commodities, not occasionally but as a business, is either a merchant or a shopkeeper. 27 Cyc. 479.

Therefore, the test to determine whether the plaintiff was a merchant or shopkeeper on April 1, 1913, is not to inquire how it got its foxes, but why it got them. If its business at that time was buying and selling foxes, it was a merchant or shopkeeper within this provision of the statue. If, however, it was not dealing in foxes, but keeping them as farmers keep sheep, it was not a merchant or shopkeeper, notwithstanding it bought its foxes intending to sell them and their increase, either for breeding purposes or for their pelts, as might "seem most advantageous to it." If, however, it bought them to sell again, or, rather, if its business is dealing in foxes, the fact that it breeds them does not change the character of its business; for in that case breeding them is merely incidental to dealing in them. The question is: How does the plaintiff expect to make its profit; by buying and selling foxes, or by raising foxes and selling them? In fact, the test to determine the validity of this tax is the same in principle that would be applied if the property had been hay, or, for that matter, almost any tangible personal property, as, for example, books or cotton cloth. The hay a dealer buys to sell again is taxable under this subdivision, but the hay he buys to feed his teams is exempt from taxation. In short, the test to determine the validity of a tax on either hay or books, in so far,

at least, as this subdivision is concerned, is to inquire as to the character of the owner's business. If he is a dealer in them and carrying them in stock, they are taxable. If, however, he bought them, not to sell, but for use in his business, they are not taxable as the stock in trade of a merchant, etc., employed in his trade or business. The reserved case is as capable of the construction that the plaintiff bought its foxes for breeding purposes as that its business is dealing in foxes. Therefore, if the parties do not agree as to what the plaintiff's business was at the time this tax was assessed, that fact must be found before any decree can be made in this case.

It will not be necessary at this time to consider whether a person who steals one of the plaintiff's foxes is guilty of larceny; for even if he cannot be convicted of that offence, the plaintiff can recover either the fox or its value from the thief. In other words, these foxes are property; and no reason is apparent, and none has been suggested, why the legislature could not include them in the list of personal property liable to be taxed. Whether it has so included them depends on the character of the plaintiff's business on April 1, 1913; in other words, on whether its business was breeding foxes or dealing in them.

*Case discharged.*

PLUMMER, J., was absent: the others concurred.