Merrimack, }
June 30, 1917. }

### Boston & Maine Railroad v. Concord.

### Same v. State.

The materials used by a railroad in building and repairing its equipment are property "used in its ordinary business" and are taxable by the state under Laws 1911, c. 169, s. 11.

The court has no original jurisdiction either statutory or at common law to appraise or tax railroad property, and the court's statutory jurisdiction with respect to such property taxable by the tax commission is exercisable only upon appeal therefrom.

Tax Appeals. The first is an appeal from a tax assessed by the city of Concord in 1913 on materials used by the plaintiffs in building and repairing equipment at their Concord shops.

After the opinion holding that the property was not taxable in Concord (*ante*, 192) was filed, the attorney-general intervened and asked the court to order the plaintiffs to pay the state a tax on the property in question for that year as the condition of a decree abating the illegal tax. The court found that the property would have been taxed by the state in 1913 but for the tax commission's mistake in thinking that it was taxable by Concord; and that it would be just for the court to assess a tax on the property in this proceeding, if it is taxable and the court has power to tax it. The questions whether the property is taxable under the provisions of Laws 1911, c. 169, and whether the court has power to tax it, were transferred by *Sawyer*, J., without a ruling from the October term, 1916, of the superior court.

The second, is an appeal from the tax commission's assessment of the general railroad tax assessed on the plaintiffs' property for the year 1916. The tax commission included in the appraisal of

plaintiffs' taxable property similar materials and supplies, at the average value for the year, used by the plaintiffs in their Concord and Keene shops; and the question whether these materials are taxable was transferred by *Chamberlin*, C. J., without a ruling from the April term, 1917, of the superior court.

*Streeter, Demond, Woodworth & Sulloway* and *Branch & Branch* (*Mr. Demond* and *Mr. Frederick W. Branch* orally), for the plaintiffs.

*James P. Tuttle*, attorney-general and Alexander Murchie (the attorney-general orally), for the state.

YOUNG, J. The question whether the materials the plaintiffs use in building and repairing equipment are taxable by the state is common to both appeals, for if these materials are not taxable they were not taxable in 1913. Whether they are taxable depends on whether the plaintiffs use them in their ordinary business within the meaning of Laws 1911, c. 169, for s. 11 provides that "every railroad . . . shall pay to the state an annual tax . . . upon the actual value of its property and estate used in its ordinary business which would not be exempt from taxation if owned by a natural person or ordinary business corporation." The plaintiffs concede that they ordinarily carry on the business of building and repairing equipment in connection with their transportation business but contend that that is not their ordinary business within the meaning of s. 11. In other words they contend that the property in question is not used in their ordinary business within the meaning of that section and that it is not taxable even though it would be taxable if owned by an individual or ordinary business corporation. They base this contention on what was said in *Boston & Maine R. R.* v. *Franklin*, 76 N. H. 459, as to the meaning of the term, "ordinary business," as used in P. S., c. 64, s. 12. The purpose the legislature had in mind when it enacted s. 11 as well as the sense in which it used the term "ordinary business" are questions of fact pure and simple and like all such questions to be decided, not by rules of law, but by weight of competent evidence. It is fair to assume that the legislature did not intend when it enacted that section to put railroads in a better position, in so far as taxation is concerned, than individuals and ordinary business corporations, but that is the effect of s. 11 if the term "ordinary busi-

ness" is given its ordinary meaning.   It is true there is a presumption that that is the sense in which the legislature used that term but it is a presumption of fact, not law; consequently it may be rebutted by competent evidence; and the fact that, if that term is given its ordinary meaning in s. 11, the personal property railroads use only mediately in the transportation business escapes taxation, notwithstanding it would be taxable if owned by an individual, tends very strongly to the conclusion that was not the sense in which the legislature used the term in that section.   In other words, it is so improbable that the legislature of 1911 intended to exempt property, when owned by a railroad, that would be taxable, if owned by an individual or ordinary business corporation, as to warrant the court in holding that was not the purpose it had in mind when it enacted s. 11, if the terms it used are capable of the construction that property which is taxable under the provisions of P. S., c. 55, when owned by an individual is taxable under the provisions of c. 169 when owned by a railroad.   *Phillips Academy* v. *Exeter*, 58 N. H. 306.   The language of s. 11 is fairly capable of such a construction for "ordinary business" is often used as synonymous with the business a person ordinarily carries on; and if that term is given that meaning in s. 11 the property in question is taxable, if it would be taxable if owned by an individual.   It does not necessarily follow, therefore, from the fact that the legislature used the term "ordinary business" in P. S., c. 64, s. 12, to describe the transportation business, that this is the sense in which it used that term in Laws 1911, c. 169, s. 11; for, as we have seen, whether that was the sense in which it used it is a question of fact, and while the evidence in the Franklin case all tended to the conclusion that this was the sense in which the legislature used it in s. 12 the evidence in this case tends very strongly to the conclusion that that term as used in s. 11 includes any business railroads ordinarily carry on in connection with the transportation business. Since the plaintiffs ordinarily carry on the business of building and repairing equipment, the materials in question are taxable as stock in trade, if they would be so taxable if owned by an individual or ordinary corporation carrying on the same business in the way and for the purpose the plaintiffs carry it on.   Stock in trade is defined in P. S., c. 55, s. 7, subdivision VI as the stock of mechanics and tradesmen employed in their trade or business.   Any person is a tradesman who carries on the manufacturing or repairing business for himself, whether he does the work with his own hands or

employs others to do it for him; for example, a blacksmith who runs a shop in which he shoes his neighbors' horses and mends their tools is a tradesman within the meaning of this section, *White Mountain Fur Co.* v. *Whitefield*, 77 N. H. 340, and that is also true of the Amoskeag Manufacturing Company: *Amoskeag Mfg. Co.* v. *Manchester*, 70 N. H. 200. Since the plaintiffs ordinarily carry on the business of building and repairing equipment, they are mechanics and tradesmen within the meaning of *s.* 7 and the materials they use in that branch of their business constitute property used in their ordinary business within the meaning of that term as used in *s.* 11 and are taxable unless the fact the only use they make of these materials is to build and repair the equipment they use in other branches of their business deprives them of the character of stock in trade. In fact, the plaintiffs concede that these materials would be taxable as stock in trade, if they used them to build and repair equipment for others, but contend that they are not stock in trade within the meaning of this provision of the statutes because the only use they make of them is to build and repair the equipment they use in the transportation business. In other words, the plaintiffs concede that they are mechanics or tradesmen within the meaning of this provision of the statutes but contend that the property in question is not taxable as stock in trade because they do not carry on this branch of their business for profit. If it were conceded that this conclusion could be drawn from the findings in the case it would not help the plaintiffs, for the property that is taxable as stock in trade is "stock . . . employed in their trade or business." The plaintiffs carry. on the business of building and repairing the equipment they use; consequently the property in question is property they employ in their trade or business. While the plaintiffs' contention that the materials they use to build and repair equipment stand just exactly the same, in so far as taxation is concerned, as those a teamster uses to build and repair carts, is sound, its application to their contention that the property in question is not taxable is not apparent. If a teamster was ordinarily engaged in building and repairing carts either for himself or others in connection with his teaming business, then and in that case building and repairing carts would be his business within the meaning of *s.* 7, subdivision VI, and the materials he used in that business would be taxable as stock in trade. If, however, the only work of this kind that he did was occasionally to build or repair. a cart, he would not be engaged in the business of building carts, and while the materials he used might or might not

be taxable under some other provision of the statutes, they would not be taxable as stock in trade; for a tax on stock in trade is not a tax on any specific property but a tax on the money a person employs in his trade or business. So if all the business of this kind the plaintiffs did was to occasionally repair a car or an engine, they would not be engaged in the business of building and repairing equipment, and while the materials they used for that purpose might be taxable, they would not be taxable as stock in trade. That, however, is not this case for the plaintiffs are engaged in building and repairing equipment. In fact, building and repairing it is as much a business in which they are engaged as transporting freight and passengers. It must be held, therefore, that the materials in question are stock in trade within the meaning of P. S., *c.* 55, *s.* 7, subdivision VI, and that they were properly taxed by the state in 1916.

The only other question that will be considered is whether the court has such jurisdiction of the plaintiffs and their property that it can value the property that escaped taxation in 1913 and assess a tax on it in this proceeding. It is enough, in so far as this case is concerned, to say that if the court has power to assess a tax on the property in question in this proceeding it has power to assess a tax on it in a proceeding brought for that purpose; for the power to make such orders as justice requires, conferred on it by P. S., *c.* 59, *s.* 11, does not include the power to compel the prevailing party in a tax appeal to pay a debt that could not be otherwise collected, which he owes a stranger to the suit, as the price of a decree abating the illegal tax, and the court must have that power if it is to give the state the relief prayed for. The power to determine what property shall be taxed and by whom the tax shall be assessed is vested in the legislature subject to the limitations imposed on it by the constitution; consequently the court has no jurisdiction either to value the plaintiffs' property or to assess a tax on it, unless there is a statute giving it that power.

The only statute giving the court any power in so far as taxing the plaintiffs' property is concerned is Laws 1911, *c.* 169,— the act creating the tax commission. Section 8 of this act provides that the commission shall appraise the taxable property of railroads and certain other corporations and assess a tax on them for the benefit of the state. Sections 11 and 24 delimit the property taxable under the provisions of *s.* 8. Sections 12, 13, 14, 15, 16 and 17 prescribe how the commission shall proceed in appraising the prop-

erty and specify certain things that it shall consider in ascertaining the value of the property and determine the rate at which it shall be taxed.   Section 18 fixes the time within which the tax shall be assessed and provides for rehearings, and section 19 gives both parties an appeal to the court from any order or finding of the commission by which their rights may be concluded.   The court's power, therefore, in respect to both appraising and taxing the plaintiffs' property is the power to revise the commission's findings on appeal, for that is the only power that *c.* 169 confers on it.   In other words, the court has no common law jurisdiction in respect to valuing and taxing the plaintiffs' property and its statutory jurisdiction is limited to revising such orders and findings of the tax commission as come before it on appeal.   The court therefore has no power to impose a tax on the plaintiffs' property that escaped taxation in 1913, in this proceeding.   Whether it has such power on appeal from an order of the tax commission, taxing or refusing to tax the property, is a question that is not and cannot be raised in either of these proceedings and as to it no opinion is intended to be expressed.

The order in the first case should be

*Appeal sustained: tax abated.*

In the second the order should be

*Appeal dismissed.*

All concurred.