Board of Tax and Land Appeals
Nos. 88-480
    88-481
    88-495

APPEALS OF TOWNS OF BOW, NEWINGTON AND SEABROOK

(New Hampshire Board of Tax and Land Appeals)

May 23, 1990

*Upton, Sanders & Smith,* of Concord (*Richard F. Upton* on the brief and orally), for the Town of Bow (No. 88-480), Town of Newington (No. 88-481), and Town of Seabrook (No. 88-495).

*John P. Arnold,* attorney general (*Peter T. Foley*, assistant attorney general, and *Monica A. Ciolfi,* assistant attorney general, on the brief, and *Mr. Foley* orally), for the State.

JOHNSON, J.    The Towns of Bow, Newington, and Seabrook (the Towns) appeal three decisions of the New Hampshire Board of Tax and Land Appeals (the Board), two dated October 18, 1988, and the other November 4, 1988, that upheld the New Hampshire Department of Revenue Administration's (the DRA) assessment ratios and equalized assessed valuations of the Towns for the 1987 tax year. The appeals were brought pursuant to RSA 541:6 and Supreme Court Rule 10 after the Board denied the Towns' motions for rehearing. We ordered the cases consolidated for briefing and oral argument. For the reasons stated below, we affirm on the issue of the DRA's use of a separate valuation category for public utility property, as well as on the issue of allocation to the Towns of public utility property valuation. The public utility property in question is that owned by Public Service Company of New Hampshire (PSNH).

The main focus of the Towns' complaint is that, because of the DRA's method of determining "equalized assessed valuations" or total equalized value, the Towns are forced to collect and pay more than their fair share of the county taxes, which are allocated to each town based on the total of equalized assessed valuation of property in each town.

It is the duty of the commissioner of the DRA to:

"Equalize annually the valuation of the property in the several towns, cities, and unincorporated places in the state by adding to or deducting from the aggregate valuation of the property as assessed in towns, cities, and unincorporated places such sums as will bring such valuations to the true and market value of the property, including the equalized value of property formerly taxed pursuant to the provisions of RSA 72:7; 72:15, I, V, VII, VIII, IX, X, and XI; 72:16; 72:17; 73:26; 73:27; and 73:11 through 16 inclusive, which were relieved from taxation by the laws of 1970, 5:3; 5:8; 57:12; and 57:15, the equalized valuation of which is to be determined by the amount of revenue returned in such year in accordance with RSA 31-A and by making such adjustments in the value of other property from which the towns, cities, and unincorporated places receive taxes as may be equitable and just, so that any public taxes that may be apportioned among them shall be equal and just."

RSA 21-J:3, XIII.

The equalized assessed valuation found by the DRA for each municipality is used to determine the proportion of county taxes that each municipality must pay under RSA 29:11. Although the DRA must find the "true and market value" of the property in each municipality so that it can equalize assessed valuations by adding to or subtracting from assessed valuations, it is not required to appraise each parcel of land in a municipality individually. RSA 21-J:3, XIII. Instead, for certain types of property, it develops and applies an "equalization ratio" to assessed valuation in order to compute the total market value of that category of property in a municipality. The property for which the equalization ratio is developed consists of "land, buildings, and manufactured housing" (LBMH).

The DRA determines the equalization ratio in the following way. For every LBMH property that was sold in the past year, a ratio of the property's assessed value to its market value is calculated. The assessed value is the value determined by the municipality in accordance with the appraisal requirement of RSA 75:1 (Supp. 1989), and may be several years old. The market value is the sale price of the property sold. For such sales that took place in the last year and are determined to have been "at arm's length," the median ratio of assessed value to market value is used to form the equalization ratio for that municipality. The median ratio is the middle ratio when the ratios are arranged from lowest to highest. The equalization ratio is

then divided into the total assessed value of all the LBMH property in the municipality, resulting in an approximation of the total market value of the LBMH property in the municipality. In addition to calculating a median ratio from the "arm's length" sales data, the DRA in these cases also calculated an aggregate ratio, as required by New Hampshire Administrative Rules, Rev 602.07(a)(3). Pursuant to the rule, the aggregate ratio is "computed by dividing the total of the assessments of the *sale properties in the survey* by the total sale prices of those properties." *Id.* (emphasis added). Nonetheless, the DRA typically uses the discretion afforded it by Rule 602.07 to choose the median ratio over the aggregate ratio in determining the municipality's equalization ratio. As Cynthia Brown, equalization supervisor for the DRA, explained at trial,

> "when you do an aggregate ratio, if you have an extremely high or extremely low selling prices or assessments, it can have an adverse or very, you know, profound effect on the outcome of the ratio. . . . So it is deemed by the Department of Revenue Administration that the median ratio is the one that we'll use in most instances because the extremes are not, or do not, affect the outcome."

In any event, use of the aggregate ratio instead of the median ratio would not help the Towns in this case, because only "sale properties in the survey" may be included in the calculation of the aggregate ratio. No public utility property was sold during the tax year at issue here, and therefore the aggregate ratio could not be affected by this type of property. The aggregate ratio, as defined above, bears *no* resemblance to the "composite" or "blended" ratios advocated by the Towns and explained below.

There are only two types of property in a municipality that do not fit into the LBMH category. These are "current use" property and public utility property. Current use property value does not enter into the calculation of the equalization ratio. Moreover, the equalization ratio is not applied to the current use property to determine its market value. Instead, RSA 79-A:6-a (Supp. 1989) provides that for the DRA's purposes, the market value of current use property is the value of the property at its current use.

Pursuant to DRA methodology and procedure, the public utility property category is similar to the current use category in that the value of public utility property does not enter into the calculation of the municipality's equalization ratios. Additionally, the municipality's equalization ratio is not applied to the public utility's as-

sessed value to determine its market value. However, whereas the market value for current use property is determined in part by statute, the market value of a public utility's property is determined solely by the DRA.

To calculate the market value of a public utility's property in a municipality, the DRA first determines the market value of the particular public utility company which owns that property. The DRA uses the "unit method" to calculate the company's market value, rather than the "summation method." That is, instead of determining total value by adding together the values of the company's individual components, the DRA calculates the company's market value as a whole. This is done by using both the cost and income approaches to determine valuation. The DRA determined that the cost approach alone produced a value of $2,527,063,900 for PSNH; the income approach produced a value of $2,619,414,500. Combined, the two approaches resulted in a figure of $2,591,709,300 for 1987, which the DRA assigned as the total value of PSNH as a whole. To determine what proportion of the company's market value should be attributed to its property in a particular municipality, the DRA calculates the proportion of the original cost of the company's total property that was spent on the company's property in that municipality. A portion of the company's market value is allocated to that municipality accordingly.

Thus, for the Towns of Bow, Newington, and Seabrook, there are three categories of property: current use property, public utility property, and land, buildings, and manufactured housing. The equalized assessed valuation for a municipality is calculated by adding together the market values of the three categories: the LBMH market value, as calculated by use of the equalization ratio; the current use market value, as determined by statute; and the public utility market value, as calculated directly by the DRA.

The Towns bring before us two issues for review. The first concerns the DRA's use of a separate valuation category for public utility property. The Towns assert that the DRA's method violates the New Hampshire constitutional requirement of uniformity and proportionality in the assessment and taxation of real estate. The DRA, on the other hand, contends its method is constitutional. The second issue concerns the DRA's method for allocating public utility property values to the Towns. The DRA argues that it is fair and reasonable to allocate part of a public utility company's total market value to the public utility property in a particular town on the basis of

original cost. The Towns, however, contend that this allocation method is unfair because it ignores the different income-producing capabilities of each town's public utility property. We hold in favor of the DRA on both issues.

## I. *Separate Valuation for Public Utility Property*

RSA 541:13 dictates the appeal standard we must use in this case:

"Upon the hearing the burden of proof shall be upon the party seeking to set aside any order or decision of the [board] to show that the same is clearly unreasonable or unlawful, and all findings of the [board] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable."

RSA 541:13. *See* RSA 71-B:12. The first issue is a question of law. Because the Board's decision on this issue was not in error, we affirm.

■■ It is lawful, reasonable, and constitutional for the DRA to use one method of equalizing assessed valuation for public utility property and another for LBMH property. Part II, article 5 of the New Hampshire Constitution provides:

"[F]ull power and authority are hereby given and granted to the said general court . . . to impose and levy proportional and reasonable assessments, rates, and taxes, upon . . . all estates . . . ."

In order to determine whether the DRA's scheme is constitutional, we must ask whether it causes disproportionate taxation. *See Amoskeag Mfg. Co. v. Manchester*, 70 N.H. 200, 204, 46 A. 470, 472 (1899). A taxpayer is disproportionately taxed if it is assessed at a greater proportion of its property's true value than are other taxpayers. *Bemis &c. Bag Co. v. Claremont*, 98 N.H. 446, 450–51, 102 A.2d 512, 516 (1954). Here, all municipalities are required by statute to be assessed at "true and market value." RSA 21-J:3, XIII. The Towns do not assert that other municipalities have been assessed at anything but market value, and therefore the Towns must prove that they (and derivatively their taxpayers) have been assessed at greater than market value in order to prove disproportionality. We

are unpersuaded that the Towns have been assessed at greater than market value, and thus we affirm the DRA's method of equalization.

The Towns argue that separately valuing public utility property causes disproportionality in taxation. However, this can only be true if the separate valuation causes the Towns' share of the taxes to be based on an equalized assessed valuation greater than market value. This is plainly not the case. The equalization ratio is a device used to *approximate* market value and is a substitute for a property-by-property appraisal by the DRA of each Town. Taking the category of utility property out of this approximation device and conducting an individual property appraisal within that category is reasonably calculated to increase the accuracy and reliability of the equalized assessed valuation determined for a municipality. The separate valuation of public utility property gives the Towns a greater assurance that they are being taxed proportionately and in accordance with the State Constitution.

Moreover, it would be inequitable for the DRA to apply the equalization ratio to determine the market value of public utility property or to use public utility value in its calculation of the equalization ratio. The equalization ratio is used with the LBMH category of property because that category consists of property susceptible to purchase and sale on the market. Changes in the market economy are reflected in the sale prices of these properties. Thus the ratios of assessed value to market value of some LBMH property can give us an indication or approximation of the ratios for all other LBMH property, and thus their market values. Public utility property does not belong in this approximation of market value because it is not readily marketable. The DRA recognized this fact, and thus valued public utility property separately from LBMH property. In so doing, the DRA properly approached the question of public utility fair market value directly, which increases the accuracy of the equalization process.

The Towns also argue that the law requires the use of one equalization ratio for all categories of property in a municipality (that is, LBMH property and public utility property) for purposes of determining that municipality's total equalized assessed valuation. Two alternative ratio formulas are proposed by the Towns to meet this "requirement," both of which would produce a higher equalization ratio for each of the Towns. If the Towns were successful in this argument, the higher equalization ratio for each Town would result

in a lower total equalized assessed valuation for each Town and hence a lower share of the county tax.

The first ratio proposed is the "composite ratio," which is derived by dividing the "net locally assessed valuation" of a municipality by its equalized assessed valuation, as calculated by the DRA. "Net locally assessed valuation" is a term of art used by the DRA to refer to the total value at which all taxable property in a municipality is assessed by the municipality. The second proposed ratio is referred to as the "blended ratio," which combines a weighted ratio for LBMH property (using the ratio calculated by the DRA) with a weighted ratio for public utility property (using a ratio calculated by the use of the Handy-Whitman Index, an inflation index for public utilities). To arrive at the blended ratio, the Towns first multiply the percent of property in a town that is LBMH property by the DRA's equalization ratio, and then multiply the percent of property in a town that is public utility property by the Handy-Whitman ratio. The sum of these two products is the blended ratio. This ratio was recommended below by the Towns' expert, David MacArthur.

■ First, we note that the law of this State does *not* require the use of a single equalization ratio. The Board correctly stated:

"The DRA may equalize properties in any way such that the result enables public taxes to be apportioned among the towns, cities, and municipalities in an equal and just manner. The relationship between the level of local assessments and current market value need not be quantified, or expressed as a ratio, by the DRA in the course of the equalization of valuation process. The DRA is under no statutory or other legal obligation to determine a single equalization ratio which considers all taxable property in each town, city, or municipality. The DRA is under no statutory or other legal obligation to include in its sales-assessment ratio study property that has not sold. To comply with RSA 21-J:3, XIII, the DRA's total equalized valuation for the [Towns] must merely represent, pursuant to accepted appraisal standards, 'the true and market value' of the property within the Town."

Second, we cannot accept the Towns' argument for a composite ratio. The Towns' appeals before this court seek a lower total equalized assessed valuation for each Town and hence a smaller share of the county tax. There is a major problem with the Town's argument. By using the DRA's equalized assessed valuations as a starting point

in calculating the composite ratios, the Towns essentially concede the validity of those valuations, while at the same time they claim the DRA's equalized assessed valuations are improperly calculated. We therefore cannot accept the Towns' proposed composite ratio.

Third, we decline to adopt the Towns' argument for a blended ratio, as recommended by MacArthur. Although calculating and adopting this ratio for each Town would increase the Town's equalization ratio and hence lower the Town's equalized assessed valuation, this method is less accurate than the DRA's approach. As stated above, it is the DRA's obligation to arrive at an equalized assessed valuation for a municipality that is as close to market value as is reasonably possible. Separately calculating the fair market value of public utility property is reasonably calculated to increase the accuracy of the end product, the total equalized assessed valuation of property in a municipality. The more property that is separately valued, the more accurate the equalized assessed valuation will be. Combining the ratio of assessed value to market value of the public utility property with the equalization ratio (carefully calculated for just LBMH property) diminishes the accuracy of the total equalized assessed valuation of the property in the municipality, because the resulting blended ratio is applied to LBMH and public utility property alike. As explained above, the vast differences in marketability between public utility property and LBMH property amply justify valuing the two property categories separately and confining the use of an equalization ratio to LBMH property only. The DRA's method of separately valuing public utility property should not be disturbed.

## II. *Allocation of PSNH Property Value to the Towns*

■ The second issue in this case concerns the fairness of the DRA's method for allocating the market value of public utility (PSNH) property to the Towns. It is a mixed question of fact and law, and therefore the decision of the Board approving the DRA's method cannot be set aside unless we are "satisfied, by a clear preponderance of the evidence . . ., that such order is unjust or unreasonable," or is based on an improper interpretation of law. RSA 541:13. Because we are not satisfied that the decision is unjust or unreasonable or contrary to law, we affirm it.

The Towns do not question the way the DRA determines the market value of PSNH as a whole as noted above. Rather, they object to the DRA's method of allocating that market value to PSNH's property located in various towns. The Towns argue that the DRA's method is unjust and unreasonable because the allocation is deter-

mined only according to the original cost of PSNH's property. They propose instead an allocation method based on each of PSNH's individual plant's income-generating capabilities. This method would increase the value allocated to the Bow and Newington properties, since the generating plants in those municipalities together produce three-quarters of the electricity generated by PSNH. Conversely, the Towns' proposed method would lower the value allocated to the Seabrook plant, since PSNH has been prohibited by law from basing its rates on its investment in the plant.

Bow and Newington each submitted requests to the Board, as did Seabrook. Included in the requests of Bow and Newington is a request waiving their objection to the DRA's unit method of allocation, in the event this court does not accept the Towns' argument as to valuation using the blended ratio, discussed above. Because we do not accept this argument, Bow and Newington have thus waived their objection to the DRA's method of allocation of PSNH property. We therefore approach the allocation issue only as it relates to Seabrook.

The record does not reveal that Seabrook has demonstrated mathematically exactly *how* the DRA's method of allocation of PSNH property over-values the total property within the town of Seabrook, or the extent of the harm to Seabrook from such allocation. While it is conceivable that the DRA's method could unfairly disadvantage Seabrook, we have insufficient evidence before us upon which we can determine that the allocation has harmed Seabrook. Given the inherent difficulty in precisely determining the value of a property such as the Seabrook plant, and given that the Town of Seabrook did not present a viable alternative to the DRA's method of allocation, or evidence that the DRA's method actually harmed the Town of Seabrook (it is conceded by the Towns that the DRA's method likely benefits the Towns of Bow and Newington), we will not disturb the Board's findings.

█ It is possible that an acceptable alternative exists to the DRA's method of determining PSNH's market value as a whole and to its method of allocating that value to the various New Hampshire municipalities. However, the Town of Seabrook has not persuaded us that the DRA's method is unreasonable. The DRA presented sufficient evidence that, in the case of the Seabrook plant, the loss in value due to non-operation is accounted for in a reduction in PSNH's value as a whole. Similarly, the high electricity production of the Bow and Newington plants contributes to the value placed on PSNH. In

short, Seabrook has not met its burden of proving unreasonableness in the DRA's original cost method of allocation. We therefore affirm the Board's decision on this issue.

*Affirmed.*

All concurred.