Coos
No. 98-699

CITY OF BERLIN

v.

COUNTY OF COOS

March 1, 2001

*Upton, Sanders & Smith*, of Concord (*Robert Upton II* and *Charles W. Grau* on the brief, and *Mr. Upton* orally), for the plaintiff.

*Waystack & King*, of Colebrook (*David D. King* and *Jonathan S. Frizzell* on the brief, and *Mr. Frizzell* orally), for the defendant.

*Carolyn M. Kirby*, assistant county attorney, of Manchester, by brief, for the New Hampshire Association of Counties, as *amicus curiae*.

BRODERICK, J. The defendant, County of Coos (county), appeals an order of the Superior Court (*Nadeau*, J.) ruling that requiring the City of Berlin (Berlin) to pay its county taxes in full would violate Part II, Article 5 of the New Hampshire Constitution unless the county gave Berlin a partial refund on its 1996 and 1997 county taxes to reflect a subsequent local abatement. We reverse.

I

The following facts either were stipulated by the parties or are supported by the record. The City of Berlin is a municipality located in Coos County, and, pursuant to RSA 29:11 (2000), it must assess, collect and pay to the county its just proportion of county taxes. In August 1996, the department of revenue administration (DRA), pursuant to RSA 76:1 (1991), determined that Berlin's share of the 1996 county tax was approximately 24.74 percent. This calculation was based upon the equalized valuation of all taxable property in the county. The total county tax bill for the 1996 tax year was $5,196,125, and the county issued a warrant to Berlin in the amount of $1,285,450 representing its proportional share.

Berlin did not appeal the DRA's equalized valuation of its property, *see* RSA 71-B:5, II (1991 & Supp. 1996) (amended 1999), upon which its share of the county tax was based. Instead, on December 16, 1996, one day before county taxes were due, Berlin voted to withhold $475,617. It did so because its largest taxpayer, Crown Vantage, claimed that Berlin had over-assessed its property for the 1996 tax year and refused to pay an identical amount in local property taxes.

In September 1997, the county served a notice of distraint on the bank holding Berlin's deposits. By agreement of the parties, $512,234.11, representing back taxes and interest, was removed from Berlin's account and placed in escrow.

In November 1997, Berlin filed a petition for declaratory judgment seeking to determine whether it was obligated to pay the balance of the 1996 county tax, plus interest. In its answer, the county asserted that Berlin was estopped from contesting the DRA's equalized valuation because it failed to appeal under RSA 71-B:5, II.

The county contended that Berlin was obligated to pay its full portion of the county tax and was not entitled to any remittance should Crown Vantage prevail in its abatement litigation.

In December 1997, the trial court conducted a hearing and engaged in a colloquy with counsel about a temporary settlement. The parties subsequently negotiated a resolution pending the outcome of the Crown Vantage litigation. Essentially, the parties agreed that Berlin would pay the portion of the county tax that would not be affected by any abatement secured by Crown Vantage, plus interest. The parties, however, reserved the right to bring the matter forward for a hearing on the merits, which the county did in early 1998.

A hearing on the merits was conducted in July 1998. The trial court ruled that "the County's refusal to repay the City for its portion of the Crown Vantage taxes in the event they are eventually abated, results in disproportionate taxation against the City's taxpayers." It fashioned an equitable remedy, ruling that "[Berlin] shall not be required to pay the County the balance of its 1996 and 1997 tax warrants until the litigation involving Crown Vantage is resolved, unless the County agrees to refund to the City that portion of the Crown Vantage taxes [eventually abated]." When its motion to reconsider was denied, the county appealed.

## II

The county argues that the trial court erred in ruling that requiring Berlin to pay its 1996 and 1997 county taxes in full, absent a refund for subsequent local abatements, would violate the proportionality requirement of Part II, Article 5 of the State Constitution. The city contends that the trial court properly ordered equitable relief to correct the unconstitutional disproportionate county tax that would have occurred in the event Crown Vantage secured an abatement. In essence, the parties dispute the constitutionality of the lack of a statutory remittance process for county taxes when municipalities provide abatements to local taxpayers.

We begin by reviewing the relevant statutory provisions relating to county taxation. Each county convention has the authority to raise taxes from municipalities within its borders. RSA 24:13 (2000). The county treasurer issues a warrant to all municipalities within the county requiring them to assess, collect and pay the county their just proportion of county taxes. RSA 29:11. Each municipality's portion of county taxes is determined on the basis of the equalized assessed valuation calculated by the DRA. *See Appeals of Town of Bow & a.*, 133 N.H. 194, 196 (1990).

In determining a municipality's equalized valuation, the DRA utilizes the certifications of value completed by the municipalities and returned to the DRA. *See* RSA 21-J:3, III, IV (2000). Pursuant to this process, Berlin's portion of the 1996 and 1997 county tax depended, in large part, upon the value it assigned to the property within its borders. The county played no role in this determination; it simply presented its revenue need to the DRA which, in turn, calculated Berlin's obligation based on the city's own assessed values.

A municipality may appeal the DRA's final determination of equalized valuation within thirty days of its receipt. RSA 71-B:5, II. A successful appeal of a municipality's equalized valuation, in effect, reduces its portion of the county tax. *See Appeal of Town of Bow & a.*, 133 N.H. at 196. If, however, it is later determined that a local taxpayer is entitled to an abatement, the municipality does not have a statutory remedy to seek a refund of its county tax payment.

Our role is confined to determining whether the lack of a refund mechanism for county taxes to account for local abatements conflicts with Part II, Article 5 of the State Constitution. *See State v. Express Co.*, 60 N.H. 219, 234 (1880). We review the matter *de novo. See Sullivan Cnty. Reg. Refuse Dist. v. Town of Acworth*, 141 N.H. 479, 482 (1996) (questions of law are reviewed *de novo*).

Our constitution vests in the legislature "the sovereign power of taxation and the control of the taxing process." *Monadnock School District v. Fitzwilliam*, 105 N.H. 487, 495 (1964). "The statutes of taxation direct when, how, and by what common agents each one's share of the public expense is ascertained, when it is due, to what common agent it is payable, and in what manner the constitutional obligation to pay it may be enforced." *Edes v. Boardman*, 58 N.H. 580, 587 (1879). Under Part II, Article 5 of the State Constitution, however, all taxes imposed by the legislature must be "proportionate and reasonable — that is, equal in valuation and uniform in rate." *Claremont School Dist. v. Governor*, 142 N.H. 462, 468 (1997). The test to determine whether a tax meets this constitutional standard is "whether the taxpayers' property was valued at the same percent of its true value as all the taxable property in the taxing district." *Id.* (quotation omitted). When the county is the taxing district, the proportionality of the challenged tax is measured at the county level. *Id.* at 468-69.

In this case, Berlin never claimed that as of the date the DRA determined its portion of the 1996 and 1997 county taxes, the property within its borders was assessed at a greater proportion of

its true value than the property in the remaining municipalities within the county. *See Appeals of Town of Bow & a.*, 133 N.H. at 199. Indeed, because it believed the valuation to be correct, Berlin did not appeal the DRA's equalized valuation of its ratable property, *see* RSA 71-B:5, II. Berlin argued, however, that if Crown Vantage secured an abatement, it would suffer a disproportionate county tax unless the county refunded a portion of the 1996 and 1997 taxes to reflect the abatement.

Berlin's position is premised on the belief that in order to satisfy the constitutional requirement of proportional and reasonable taxation, the value of Crown Vantage's property, as determined in the abatement proceeding, constitutes its true value, and that the DRA must recalculate Berlin's equalized valuation for past tax years to reflect this revised value. *See* RSA 21-J:3, XIII (2000) (DRA must calculate an equalized assessed valuation to determine "the true and market value" of taxable property). We conclude, however, that the constitution does not compel such a result.

The demand of constitutional equality in taxation anticipates some practical inequities. *Duncan v. Jaffrey*, 98 N.H. 305, 307 (1953). "Absolute mathematical equality is not obtainable in all respects if taxation is to be administered in a practical way." *Id.* Indeed, in *Bow v. Farrand*, 77 N.H. 451, 452 (1915), we held that a person cannot complain of unconstitutional inequality or disproportionality simply because the valuation of his or her property was not computed on the day of the tax assessment. In that case, the Town of Bow and several of its taxpayers claimed that the assessment of their property was unconstitutional because it was based upon a two-year-old property valuation. *Id.* at 451. We observed that there is no constitutional provision requiring the value of property to be computed on the day the tax is assessed and that "in so far as the state tax is concerned that would be an impossibility." *Id.* at 452. We held that the constitutional requirement of equal and proportional taxation mandates only that property be valued "within a reasonable time before the tax is assessed" and that such time frame is a question of fact for the legislature. *Id.*

In certain respects, Berlin is similar to the plaintiffs in *Bow* in that it challenges the appropriate timeframe to determine the value of its property. It seeks to have the value of municipal property calculated some time after the county taxes are assessed in circumstances where there is substantial pending abatement litigation involving local taxpayers. This position advances an impracticable method of taxation that is not required under Part II, Article 5.

Under Berlin's theory, a municipality could accept the accuracy of the DRA's equalized valuation, which is based upon the municipality's *own* assessment of the property within its borders, and pay in full its portion of the county tax. Thereafter, should a local taxpayer secure a property tax abatement as a result of the municipality's over-assessment, whether occurring within the tax year or several years beyond, the municipality could seek a refund of the previously paid county tax in proportion to the later abatement to achieve equal and proportional county taxation. Apparently, Berlin anticipates that its refund will be financed by increasing the county taxes paid by other municipalities within the county, requiring them to generate taxes for past tax years. This retroactive reapportionment of county taxes would occur, presumably, once the abatement litigation concluded in a particular municipality, which might occur years after the county and its municipalities have spent the money budgeted for the disputed tax year.

Moreover, in any given tax year there may be multiple municipalities within a county providing abatements for over-assessment, and thus Berlin's neighboring municipalities could also seek a refund of a portion of disputed county taxes. It is not practical, and may, in fact, not be possible, for municipalities to anticipate and budget year after year for such retroactive reapportionments based upon abatements occurring in other municipalities. Virtually no certainty could exist in the fiscal management of local and county affairs.

■ Perhaps the legislature was guarding against this mischief by providing a narrow time period for an appeal of the DRA's equalized valuation under RSA 71-B:5, II, while not providing an additional process to allow municipalities to force a recalculation of their county tax as a result of local abatements. In effect, the legislature has limited the period for contesting the lawfulness of a county tax, and we cannot say its judgment is unreasonable in light of the alternative offered by Berlin. *See Bow*, 77 N.H. at 452. Therefore, we conclude that Berlin would not have suffered any unconstitutional disproportionality of its county taxes, regardless of the outcome of the Crown Vantage abatement litigation.

Given our resolution of this issue, we need address only one additional argument.

## II

Berlin contends that the county is bound by the December 1997 negotiated settlement and that by its terms, the county only reserved the right to bring forward issues relating to tax years subsequent to 1996 and 1997.

When determining the purpose of a settlement agreement, "we focus on the intent of the contracting parties at the time of the agreement." *Huguelet v. Allstate Ins. Co.*, 141 N.H. 777, 779 (1997). To determine the parties' intent, we "consider the situation of the parties at the time of their agreement and the object that was intended thereby, together with all the provisions of their agreement taken as a whole." *Id.* (quotation omitted). "The meaning of [the] contract is ultimately a matter of law for this court to decide." *Id.* (quotation omitted).

In February 1998, the parties entered into a stipulation regarding the 1996 and 1997 county taxes. The stipulation stated that "the parties agreed to a compromised negotiated settlement, pending the outcome of the case involving the City of Berlin and Crown Vantage Corporation, which was then pending in the New Hampshire Supreme Court." Berlin agreed to pay a portion of the 1996 and 1997 county tax bill, plus interest, and the stipulation noted Berlin's payment of that amount. Berlin also agreed to pay additional back taxes, plus interest, to the extent it collected back taxes from Crown Vantage that exceeded the amounts Berlin had already paid to the county. In the last paragraph of the stipulation, the parties "reserv[ed] the right to bring this matter forward for a hearing on the merits."

There is no language in the stipulation showing that the county ultimately waived its right to litigate the merits of Berlin's refusal to pay the 1996 and 1997 county tax assessments in full. Moreover, the record of the December 1997 hearing in the superior court reveals that the 1998 stipulation resulted from a colloquy between the court and the parties regarding a temporary solution beneficial to both parties that would not prejudice the county's ability to later argue the merits of the 1996 and 1997 county tax bill.

In particular, during the hearing the trial court suggested that Berlin immediately pay that portion of the county tax it agreed it owed even if Crown Vantage secured an abatement, and that if Crown Vantage lost the litigation, Berlin would pay the full amount due. The court suggested this "short term" solution to give the county access to some of the money held in escrow which it could then apply to the city's portion of the outstanding county tax bill.

The court recognized, however, that for the "long term" a decision on the merits was necessary. When responding to the court's suggested temporary resolution, the county expressed reluctance to agree to anything that was "with prejudice" to its ability to argue the merits. The court assured the county that the

suggested resolution was a compromise position during the pendency of the Crown Vantage litigation, and Berlin agreed. Accordingly, we reject the city's argument that the 1998 stipulation prevented the county from litigating the balance due from Berlin for the 1996 and 1997 tax years.

*Reversed.*

BROCK, C.J., and DALIANIS, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred; DALIANIS, J., took part in the final vote by consent of the parties.